216   SUPREME COURT OF WISCONSIN.   [Oct.

Marcott v. Minneapolis, St. P. & S. S. M. R. Co. 147 Wis. 216.

MARCOTT, Appellant, vs. MINNEAPOLIS, ST. PAUL & SAULT
STE. MARIE RAILWAY COMPANY, Respondent.

*October 7—October 24, 1911.*

*Railroads: Negligence: Failure to heat sleeping car: Passenger con-
tracting disease: Special verdict: Consistency: Changing an-
swers: Insufficient evidence.*

1. In an action against a railway company, wherein it was alleged
   that plaintiff had contracted pneumonia by reason of defend-
   ant's failure properly to heat a sleeping car, findings by the
   jury to the effect that plaintiff did contract pneumonia in the
   car by reason of the cold and damp condition of the atmosphere
   therein, and that such condition was in fact dangerous, but
   that defendant had no reason to anticipate any injury there-
   from to any healthy person sleeping in the car, were not incon-
   sistent and entitled defendant to a dismissal of the action.
2. The evidence in such case (stated in the opinion) is *held* not to
   show with any reasonable certainty that the atmospheric con-
   ditions of the car were such as to render it dangerous for
   healthy persons to sleep therein, protected as the passengers
   were, and to leave it a matter of mere conjecture where plaint-
   iff contracted his pneumonia; and the trial court was war-
   ranted in changing the findings of the jury accordingly and di-
   recting judgment for defendant.
3. Verdicts cannot rest upon mere conjecture, but must be grounded
   at least upon a reasonable certainty.

APPEAL from a judgment of the circuit court for Mari-
nette county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

The complaint alleges, in substance, that on the 12th day
of May, 1906, plaintiff was at the city of Minneapolis, Min-
nesota, and, being desirous of returning to his then home in
Escanaba, Michigan, he purchased of defendant a passenger
ticket, good for transportation over defendant's line of road
between said points, and he also purchased of the defendant
a sleeping-car ticket entitling him to a berth in a sleeping car
then operated by it between Minneapolis and Escanaba; that
he boarded defendant's train about 6:30 p. m. of that day,
and it became and was the duty of the defendant to provide

for the comfort and health of the plaintiff while so aboard defendant's said train, and more particularly to protect plaintiff against the inclemency of the weather and to keep its cars and train comfortably heated; that notwithstanding its said duty in this regard and while its said train on which plaintiff was a passenger was passing through the state of Wisconsin the defendant wholly neglected and refused to provide and furnish heat to its said train and cars or to any of the cars of said train, although the wind was blowing so cold, sleet and snow were falling, and the temperature was so low and the weather so inclement as to make it dangerous to the health of plaintiff and other passengers then upon said train because of said failure to keep its said train and cars properly heated; that because of defendant's such failure in that regard plaintiff, while on board said train, contracted typhoid pneumonia and reached Escanaba, Michigan, so sick and ailing that he was confined to his bed; that defendant's said train was delayed several hours and plaintiff became and was much distressed and suffered great pain on the way; that plaintiff has ever since been, and now is, an invalid because of said disease thus contracted; that plaintiff's lungs have become and are seriously and permanently diseased, and plaintiff is, as a result of the disease thus contracted, sick, sore, and permanently disabled; that plaintiff has suffered and still continues to suffer great pain bodily, and mental pain and anguish, and has been wholly disabled and prevented from earning a livelihood, and has been occasioned and will in the future be occasioned great expense for medicine and physicians, and is informed and believes that he will have to undergo severe surgical operations to preserve his life and alleviate his sufferings, to his damage in the sum of $50,000.

The answer contains a general denial and an allegation that as to whether the plaintiff was a passenger on one of defendant's trains at the time alleged defendant has no knowl-

edge sufficient to form a belief, and therefore leaves the plaintiff to his proof in that behalf.

The jury returned the following special verdict:

"(1) Did the plaintiff become ill with pneumonia while a passenger in one of the defendant's sleepers on the night of May 12, 1906?  *A.* Yes.

"(2) Was said disease contracted while said plaintiff was sleeping in his berth in said car?  *A.* Yes.

"(3) If your answer to the second question should be 'Yes,' then answer this: Was said disease caused by the plaintiff, while sleeping, becoming chilled by reason of any cold and damp condition of the atmosphere in the car?  *A.* Yes.

"(4) If you should answer the third question 'Yes,' then answer this: Was the condition of said atmosphere such as to render it dangerous for healthy persons to sleep in it protected as passengers were in their berths in said car?  *A.* Yes.

"(5) If your answers to the third and fourth questions should be 'Yes,' then answer this: Ought a man of ordinary intelligence and prudence in charge of said car, as the porter was, to have reasonably anticipated that by permitting the atmosphere to become as cold and damp as it was in said car, the health of some healthy person would be injured thereby while sleeping in his or her berth?  *A.* No.

"(6) If you should answer the second, third, and fourth questions 'Yes,' then answer this: Did the temperature of said car fall below sixty degrees after the plaintiff retired and before he awakened in the chill?  *A.* Yes.

"(7) If you should answer the second, third, and fourth questions 'Yes,' then answer this: Was the chill in which the plaintiff awoke a pneumonic chill?  *A.* Yes.

"(8) If your answer to the second, third, and fourth questions should be 'Yes,' then answer this: At what amount do you assess the plaintiff's damage which resulted directly and proximately from the disease which he contracted while asleep in said car?  *A.* $15,000."

Upon motions duly made, the court changed the answers to questions 2, 3, and 4 from Yes to No, and awarded judgment upon the verdict so amended in favor of the defendant. Plaintiff appealed.

For the appellant there was a brief by *Martin, Martin & Martin,* and oral argument by *P. H. Martin.*

For the respondent there was a brief by *H. O. Fairchild,* attorney, and *Alfred H. Bright,* of counsel, and oral argument by *Mr. Fairchild.*

VINJE, J.   The evidence necessarily took a wide range and is quite voluminous.   The questions, however, calling for a decision upon appeal lie within a narrow compass.   The first one is, Was plaintiff entitled to judgment upon the verdict returned by the jury?   They found that plaintiff contracted pneumonia upon the train by becoming chilled owing to the cold and damp condition of the atmosphere in the car; that the condition of the atmosphere was such as to render it dangerous for healthy persons to sleep in it protected as passengers were in their berths.   But they further found that a man of ordinary intelligence and prudence in charge of the car as the porter was, ought not reasonably to have anticipated that such cold and damp condition of the atmosphere would injure the health of a healthy person sleeping in his berth.   There is nothing inconsistent in these findings.   They found that a dangerous condition of the atmosphere did in fact exist, but that defendant had no reason to anticipate or know that it was dangerous.   To sustain liability it is not enough to show that defendant permitted a dangerous condition to exist.   It must also be shown that it was negligently permitted to exist.   If defendant had no reason to anticipate any injury to any healthy person by reason of the atmospheric condition maintained it was not negligent.   *Green v. Ashland W. Co.* 101 Wis. 258, 77 N. W. 722.   The verdict returned by the jury therefore entitled the defendant to a dismissal of the action upon the merits.

Was the trial court warranted in changing the answers to questions 2, 3, and 4 from Yes to No?   As to question 2, it is sufficient to say that the utmost plaintiff can claim from any

testimony in the case, including that of his own medical experts, is that the atmospheric condition in the car was such that it might produce pneumonia. None of the experts testified that plaintiff's pneumonia was, in their opinion, caused by such condition, or that it was reasonably certain that such condition would probably produce pneumonia. Moreover, the consensus of all the medical testimony, and of common observation and experience, is that it would require more than three or four hours from the first exposure to fully develop a pneumonic chill such as the plaintiff had when he awoke the second time. The reasons for changing the answer to this question will appear more fully in the discussion relative to questions 3 and 4. These two questions can be treated together.

Plaintiff, at the time of the alleged exposure, was forty-two years of age, in good health, and weighed about 150 pounds. He claims that he felt first-rate when he entered the car at Minneapolis; that he noticed nothing unusual about the temperature of the car at the time he entered; that he rode for a while in the smoking compartment, with the window open, but was not subjected to any draft and did not feel uncomfortable. About 9:30 in the evening he retired, and went to sleep about 10 o'clock. Later he was awakened by a noise like that of a torpedo, heard the trainmen talk, and knew the engine was cut off. He said the car seemed cold, but he called for no additional cover. On cross-examination he testified the car was comfortable when he awoke, and later, on direct examination, he testified that he then felt all right; that he went to sleep almost immediately; that he thought he slept about an hour or two, but could not tell just how long; that he then woke up with a chill; that it was the chill that woke him up. He was so cold that he shook and the car seemed cold to him. He asked the porter for heat, and was told the engine was disconnected and that no more heat could be given him just then. He had a high

fever and a headache.   He was conscious that some time
later the engine came back and coupled onto the train.   He
said it seemed to him quite a while afterwards.   But the un-
contradicted evidence of the trainmen, including the engineer,
is that not to exceed fifteen minutes after they arrived at the
wreck near Ladysmith the engine of the passenger train was
uncoupled, and it proceeded to assist in removing the wrecked
engine; that it was engaged in that work not to exceed fifteen
minutes; some witnesses place it at from thirty-five to forty
minutes, and the outside limit of all the testimony is fifty
minutes; that the engine was then brought back and attached
to the passenger train and the heat connected as usual.

It may therefore be said to be a verity in the case that from
the time when plaintiff first awoke as they first approached
the wreck to the time of the pneumonic chill no more than
an interval of from sixty-five to seventy minutes could have
elapsed; and it was during this time, it is claimed, that he
contracted pneumonia.   There is practically an entire ab-
sence of evidence to show that the temperature of the car was
cold or damp or dangerous to sleeping persons during this
night.   At Barron, thirty miles west of Ladysmith, the maxi-
mum temperature on the 12th was seventy-six degrees, the
minimum fifty-eight degrees.   At Prentice, forty miles east
of Ladysmith, the maximum temperature on that day was
seventy-five degrees, the minimum sixty degrees.   These two
places are the nearest to the place of the wreck showing the
exact temperature, and it is fair to assume that the tem-
perature at Ladysmith did not differ very materially from
that at Barron and Prentice, being in the same latitude and
only from thirty to forty miles distant, west and east re-
spectively, from these two places.   Mrs. Calloway, a passen-
ger upon the sleeper, testified that she was dressed in ordinary
spring clothes, that she retired about 10 or half past 10 in
the evening, undressed, and put on an ordinary sleeping
gown; that before she retired she used no wraps or coats; that

she was comfortable; noted nothing abnormal about the temperature of the car; and that after she retired she used the ordinary covering of the berth and was comfortable. Miss Holland, another passenger, corroborates this testimony. There were eight or ten other passengers in the car at the time. The porter of the train testified that the temperature of the car did not fall below sixty degrees; that it was from sixty to sixty-five degrees. Some of the men working about the wreck testified that it rained before the passenger train arrived at the wreck, but that it did not rain while the train was there. Others said there were occasional light showers during the night. All unite in saying that the night was not a cold one; that they were comfortable when standing about the wreck; that there was no sleet or snow and no unusual wind, or anything to indicate a cold night. The car had double sash and heavy curtains inside of the windows. In the car, before the passengers retired, there were six large acetylene lamps, each with four burners, burning in the body of the car and in the ceiling over the aisle. There was also one smaller lamp in the smoker, one in the drawing room, one over the door of the smoking room, four toilet room and two aisle lamps. The testimony is uncontradicted that these lamps give out considerable heat; also that after the passengers retired two of these lamps were left burning. One of these four-burner lamps was in front of plaintiff's berth. Each berth had heavy curtains in front and was furnished with a pair of large heavy woolen blankets and two sheets as covers.

Plaintiff claims there was a sudden drop of temperature in the car. This claim is wholly unsubstantiated by any direct evidence, and also by all reasonable inferences to be drawn from the whole testimony in the case. It does not appear that the doors or windows of the sleeper were open in the evening, except perhaps some of the deck-sash. But even if they were, in the absence of a strong wind, and there is no evidence of

any, it is a matter of common knowledge that such a car, standing upon the track and being sufficiently heated at 11:30 o'clock p. m., so that both plaintiff and other passengers felt comfortable, would not cool suddenly. The cooling would be the result of gradual radiation of heat, and the process would be a slow one; especially must that be so in an outside temperature of about fifty-eight degrees. So it cannot be said the evidence shows any sudden change in temperature. Indeed the uncontradicted evidence, and all reasonable inferences that can be drawn therefrom, are to the effect that if there was a change it was a slow and gradual one.

On the evening of the 11th plaintiff took a Turkish bath at Minneapolis and remained in the bath rooms all night. During the day of the 12th he went to different offices and mills in the city of Minneapolis. There was a light shower during the afternoon, but he was not exposed to it. There is an entire absence of evidence as to what exposure, if any, plaintiff had been subjected to previous to the time he left Escanaba for Minneapolis on the night of the 10th. He testified, however, that he never felt better than he did when he left home and that he felt all right when he left Minneapolis on Saturday evening at 6:30.

The above is a fair summary of all the material evidence concerning the conditions under which plaintiff slept in the car. If any legitimate inference can be drawn therefrom it must be to the effect that plaintiff's pneumonia was not caused by the atmospheric conditions that obtained in the car while he slept or while he was awake. But it is not necessary, in order to sustain the action of the trial court, to draw any such inference. If it appears that it cannot be said with any reasonable certainty that plaintiff's pneumonia was caused by the atmospheric conditions of the car, or that they were such as to render it dangerous for healthy persons to sleep therein, protected as the passengers were, then the court's action must be sustained. Verdicts cannot rest upon mere conjecture.

They must be bottomed at least upon a reasonable certainty. In this case, under the whole evidence, it is a matter of pure conjecture where plaintiff contracted his pneumonia, and the trial court properly amended the verdict and directed judgment for defendant.

*By the Court.*—Judgment affirmed.