# CASES DETERMINED

AT THE

# January Term, 1912.

---

BROSSARD, by guardian *ad litem,* Respondent, vs. MORGAN
COMPANY, Appellant.

*April 25—May 14, 1912.*

*Master and servant: Negligence: Injury from defective appliances.
Breaking of drive-belt: Proximate cause: Reasonable anticipation of injury: Evidence: Questions for jury: Special verdict:
Fellow-servants: Making of repairs: Damages: Appeal: Review.*

1. Proof that a drive-belt, used to operate a wood-working machine
   near which plaintiff worked in defendant's factory, was made
   of several pieces spliced together and fastened with glue, that
   it was old and had parted several times, and that after separating at one of the splices and being repaired it separated again
   at the same place about two hours after starting up, is *held*
   sufficient to sustain a finding of negligence in furnishing defective appliances.

2. *It seems* that every sane man is bound to anticipate that the
   breaking of a defective belt driven at a high rate of speed and
   subject to great strain may result in injury to a person at work
   near such belt; but in any event the proof in this case that the
   superintendent of defendant's factory knew of the probability
   of such injury was sufficient to charge the defendant with such
   knowledge.

3. If the fact of reasonable anticipation of injury, as an element of
   proximate cause, is established as a matter of law, error in
   submitting the question to the jury is harmless if the jury answer it correctly.

4. Where the facts are undisputed and no conflicting inferences therefrom can reasonably be drawn, the question of proximate cause becomes one of law.

5. The jury having found in this case that defendant was negligent in furnishing a defective drive-belt, the undisputed evidence is *held* to establish the further fact that such negligence was the proximate cause of the injury to plaintiff, who, when the belt broke, was struck thereby and lost an eye.

6. Technically, findings by the jury that defendant negligently failed to equip the machine with a reasonably safe drive-belt or with a suitable drive-belt shifting device, and negligently failed to warn plaintiff of the danger to which he was exposed while working at the machine equipped as it was, included a finding that defendant had reasonable ground to anticipate an injury to some one by reason of the defects.

7. In an action for personal injuries caused by the breaking of a drive-belt, evidence that the belt had broken on previous occasions and that persons had been injured thereby was competent, the former to show the belt defective, the latter to charge the master with knowledge of the danger therefrom.

8. Although the jury found that there was no negligence in failing to guard the belt which broke, so that the defense of assumption of risk was open to defendant, there was no error in failing to submit a separate question on that subject, none being asked by defendant; and on appeal that question will be deemed to have been included in and covered by the question relating to contributory negligence.

9. The fact that a drive-belt which broke and injured plaintiff had shortly before been repaired by another employee of the defendant, who was regularly charged with the duty of making repairs, and put back in its place in a defective condition, would not relieve defendant from liability, either under the fellow-servant rule or on the ground that the act of repairing the belt was an ordinary step in the progress of the work in which plaintiff with others was engaged.

10. Where plaintiff's injuries consisted of a scalp wound, involving a surgical operation and loss of one eye with some impairment of vision in the remaining eye, headache, and dizziness, and the ordinary loss of capacity, disfigurement, etc., resulting from the loss of an eye, an award of $6,000 is *held*, though large, not so excessive as to call for reversal or modification on appeal.

11. Where, as in actions for personal injuries, the damages are unliquidated and cannot be determined by rule, the jury and trial

judge are responsible for a proper assessment thereof and cannot shift that responsibility. In ordinary cases the supreme court will not interfere with the assessment, but in a case of gross and manifest abuse, where the amount awarded by the jury indicates passion or prejudice and the trial judge has failed to act properly, will exercise its revisory power and reduce the award by granting a new trial conditionally, as the trial judge should have done.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

In this case there was a special verdict as follows:

"(1) Was the plaintiff injured at the time alleged by the breaking of the drive-belt on the sticker at which he was set to work? *A.* (by the court). Yes.

"(2) Did the defendant at the time the plaintiff was injured negligently fail to equip said sticker with a reasonably safe drive-belt? *A.* Yes.

"(3) Did defendant at the time plaintiff was injured negligently fail to equip said sticker with a suitable and proper drive-belt shifting device? *A.* Yes.

"(4) Did the defendant negligently fail to warn and instruct the plaintiff as to the danger to which he was liable while doing the work at said machine equipped as it was? *A.* Yes.

"(5) Did the defendant negligently omit to securely guard or fence said belt? *A.* No.

"(6) If to questions Nos. 2, 3, 4, or 5, or any of them, you answer 'Yes,' then were the facts so found the proximate cause of plaintiff's injury? *A.* Yes.

"(7) Was plaintiff furnished with a place to work as safe and free from danger as other persons of ordinary care, prudence, and caution, engaged in like business and under like circumstances, generally furnished at the time of the injury? *A.* No.

"(8) Was plaintiff injured at the time and place in question as the result of a pure accident? *A.* No.

"(9) Did any want of ordinary care on the part of plaintiff contribute to cause of injury? *A.* No.

"(10) What sum will fairly compensate the plaintiff for the injuries he sustained? *A.* $6,000."

For the appellant there were separate briefs by *Weed &
Hollister,* attorneys, and *Charles Barber,* of counsel, and oral
argument by *Mr. Barber* and *Mr. H. I. Weed.*

*W. B. Rubin,* attorney, and *John F. Kluwin,* of counsel, for
the respondent.

TIMLIN, J.    It is contended by appellant that there is not
sufficient evidence to support the answer to the second, third,
fourth, or sixth question of the special verdict.    The plaintiff
was in the employment of defendant, engaged in taking away
pieces of lumber that had passed through a machine known as
a sticker.    He was about seventeen years of age.    While thus
engaged the belt that drove the machine broke and struck the
plaintiff, causing the loss of an eye.    This was a leather belt,
consisting of sections spliced and fastened together at the
splices with glue.    There was evidence, not controverted, that
this belt came apart or broke a week before and again on the
day before the injury to plaintiff.    The last break was re-
paired that evening by again gluing the parted sections to-
gether, and it began and ran about two hours the next morning
and again broke and caused the injury in question.    There
was also evidence tending to show that the belt was an old one.
In describing the rupture of the belt some of the witnesses
said: "It broke where it was glued together."    Another: "It
broke in a splice.    I think it was the same splice.    The splice
I fixed the night before I think was the splice that parted
when *Brossard* was hurt."    This was sufficient to convince the
jury that the belt separated at the splice from lack of adhesive
qualities of the glue or proper drying, or because of the insuf-
ficiency of glue fastening, and also entitled the jury to infer
that, in replacing the belt in such condition that it parted
about two hours after starting up, the defendant furnished a
defective appliance.    The belt ran with considerable speed
and was subject to the usual strain of driving wood-working
machinery of this kind, and the position of the plaintiff with

reference to the belt, while engaged in his work, was at times such that a defective belt would be dangerous to him. The second question of the special verdict rests, therefore, on sufficient evidence.

There was no belt-shifting device. By the third question the jury found that the defendant, in failing to so equip the machine, was negligent. By the fourth question the jury found that there was negligence in failing to warn and instruct the plaintiff. It is unnecessary to discuss the evidence with reference to the two questions last mentioned. If we assume as most favorable to the defendant that the evidence was insufficient or unsatisfactory with respect to these questions, that would not affect the result. The circuit court instructed the jury that if they should find the defendant was guilty of negligence under questions 2, 3, 4, and 5 they should then answer the sixth question Yes. In giving this instruction the learned circuit court evidently proceeded upon the theory that there could be, under the evidence and the circumstances mentioned by him, no doubt concerning the proximate cause of the injury. He had before him this situation: On the trial the defendant stated: "We admit that the boy lost his eye by reason of the breaking of the belt." In addition to this the evidence was without dispute that this belt had broken the day before the injury to plaintiff and again a week before such injury. This the superintendent in charge for defendant did not deny, but merely testified that he did not know of any such accident as that of a man getting a black eye or being hit in the leg with a broken belt. He however testified, bearing on that element of proximate causation called anticipation of injury, as follows: "I have heard of belts breaking, have seen belts break. They tear in revolving in the machinery. Strike with considerable force sometimes. The belt might strike in any direction, and if it hit someone it might hurt. . . . If he was struck with a broken belt he would get hurt." It was not necessary to carry this knowledge farther than to the su-

Brossard v. Morgan Co. 150 Wis. 1.

perintendent of the works.    It might also, we think, fairly be said that every sane man is bound to anticipate injury to someone from the breaking of a defective belt run at great speed and subject to a severe strain, if it is shown that persons are required to be near that belt while it is in operation.    Frank Tech, a witness for the plaintiff, testified that about a week before the injury to plaintiff another man in this mill was hurt by the breaking of a belt.    This was denied only inferentially by proof that the superintendent of the mill had not heard of it.    The evidence was without dispute that the plaintiff was required by his work to be near this belt and in such position that the belt might strike him if it broke.    There is also evidence to the effect that other employees were required to pass in proximity to this belt.    The defendant attempted to meet this by the testimony of F. J. Perkins, who had been master mechanic for the Paine Lumber Company for eighteen years, and testified that he never knew of any man getting hurt in their factory by reason of the breaking of a belt either on stile stickers or other machines. . . . He never heard of anybody getting hurt before.    He has known of a belt breaking.    When it breaks it might fall on the floor and it might go up in the air.    If someone was in front of it it might strike him.    No belt has broken in his shop and struck any one since 1884. But they never allow a belt to run on the machine that is liable to break or hurt somebody or do any damage.    One can tell whether the belt is getting rotten and old.    If it broke twice within a week he would fire it.    A belt that breaks twice in one week he thinks defective.    If a belt breaks within two or three hours after it is put on after gluing, he should say there was something wrong.    G. R. Zellmer, superintendent for the defendant, testified that during the eleven years he had been connected with the defendant in that capacity he did not recollect of a single accident to an employee from the breaking of a belt before *Brossard* was hurt.

It will be observed that the actual physical cause of the injury was admitted by defendant upon the record. This left for inquiry only the question whether such actual physical cause was the legal or proximate cause. That may be a question of fact or a question of law, according to whether the evidence bearing on the subject is controverted or uncontroverted. The fact of reasonable anticipation of injury as an element of proximate cause may be established by the evidence, and, if so, any error in submitting it to the jury becomes innocuous if the jury answers the question correctly. *Nelson v. C. & N. W. R. Co.* 130 Wis. 214, 109 N. W. 933; *Davis v. C., M. & St. P. R. Co.* 93 Wis. 47, 67 N. W. 16, 1132; *Wheeler v. Milner,* 137 Wis. 26, 118 N. W. 187. Where the facts are not disputed and no conflicting inferences therefrom can be reasonably drawn, the question of what is the proximate cause of an injury is a question of law. *Allen v. Voje,* 114 Wis. 1, 89 N. W. 924. We fail to see any controverted question of fact in this case relating to the proximate cause of the injury. The actual cause being admitted, the knowledge of the defendant's superintendent that injury might flow from the breaking of a belt, the further fact that this is common knowledge, the proximity of plaintiff to the defective belt, and the fact, established by the verdict, that the belt was defective, are not at all offset by the infrequency of belts breaking in Paine's mill. That may be due to care and diligence on the part of the Paine Lumber Company in not allowing defective belts to be used. No issue of fact arises upon such testimony even if we accept the testimony on the part of the defendant to be true as stated by all defendant's witnesses who testified on this point. Again, the learned circuit judge was, aside from the foregoing, technically correct in his statement that if the jury found the defendant was guilty of negligence under questions 2, 3, 4, and 5 they should answer the sixth question in the affirmative; because they could not find the defendant negligent un-

der these questions 2, 3, 4; and 5, or either of them, without. finding that the defendant had reasonable ground to anticipate an injury to someone by reason of the defective belt.

"Mere carelessness is not ground of liability unless a breach of some duty to others and committed under such circumstances as to render injury to the person or rights of another probable." *Compty v. C. H. Starke D. & D. Co.* 129 Wis. 622, 624, 109 N. W. 650.

"If defendant had no reason to anticipate any injury to any healthy person by reason of the atmospheric condition maintained it was not negligent." *Marcott v. M., St. P. & S. S. M. R. Co.* 147 Wis. 216, 219, 133 N. W. 37.

"In order to make out a case of actionable negligence it. must appear that the person sought to be charged therewith had knowledge that his act or omission complained of was likely to cause injury to some person or thing. This knowledge may be actual or imputed." *Wickert v. Wis. Cent. R. Co.* 142 Wis. 375, 376, 125 N. W. 943.

"Mere carelessness from which no injury to another can be anticipated is not negligence in the legal sense." *Sparks v. Wis. Cent. R. Co.* 139 Wis. 108, 111, 112, 120 N. W. 858.

"The duty is, not to never fail, but not to fail under such circumstances that a reasonably prudent person might infer injury as a natural and ordinary consequence of such failure,. to one to whom the duty is due." *Hasbrouck v. Armour & Co.* 139 Wis. 357, 363, 121 N. W. 157.

"Negligence in law is not mere carelessness, but is careless. conduct under such circumstances that an ordinarily prudent person would anticipate some injury to another as a reasonably probable result thereof." *Johanson v. Webster Mfg. Co.* 139 Wis. 181, 184, 120 N. W. 832.

See, also, 29 Cyc. 432, and cases in notes 11, 12, 13, 14 *et seq.*

By their findings of negligence the jury covered this essential quality of the act of negligence. But in the instructions to the jury upon the second, third, fourth, and fifth questions. the court did not in every instance specify to the jury this. quality of negligence. He did so with reference to the fourth question and with reference to the fifth question. The fourth.

was answered favorably to the defendant, but the fifth was answered favorably to the plaintiff. In the instructions on this question the court said:

"On the other hand, it is contended on the part of the defendant that it was not a dangerous place to work and there was no instructions which they could have given him that would have avoided this accident, and that such an accident could not have been reasonably anticipated by them, and therefore they were not guilty of any negligence in failing to instruct or warn him. That is for you to determine from all the evidence," etc.

But we prefer to rest this decision upon the evidence, and, resting it there, we are of the opinion that the undisputed evidence as above set forth sufficiently established that if it is granted or found that defendant was negligent in furnishing a defective belt, then the negligence of the defendant was the proximate cause of plaintiff's injury and that no other cause is shown by or fairly inferable from the evidence. Hence there was no error in the instruction. Chief Justice WINS-LOW and Justices MARSHALL and BARNES do not agree with the opinion of the court on this point. We find no prejudicial error in the instructions or in the rulings of the court refusing to set aside the answers of the jury to the questions in the special verdict.

It is argued that the evidence relating to the breaking of the belt on other occasions was incompetent under the rule of *Lind v. Uniform S. & P. Co.* 140 Wis. 183, 120 N. W. 839, and cases there cited. We do not so understand it. The mere fact that other injuries occurred, when that fact has no logical connection with the issue on trial, is of course incompetent, but it would conflict with common sense as well as with law to hold that the defective character of an appliance could not be proven by showing that the same appliance broke or failed under similar circumstances and within a short time prior to the breaking or failure in question. Whether or not any one was injured by such former breaking or failure is

more remote, but still competent on the question of notice to the master of the dangerous character of the defect or insufficiency. The extent and detail of such other injuries is a collateral inquiry which should not be indulged in.

Under this verdict the liability of the defendant is not predicated upon the statute, sec. 1636j, Stats. (1898), but upon common law. Because of the negative answer to the fifth question the defendant was entitled to defend on the ground that the plaintiff assumed the risk. This defense is not otherwise covered than by the ninth question. No separate question relating to assumption of risk was requested by the defendant. That subject must therefore be held to have been included in and covered by the ninth question. There was sufficient evidence to support a finding that the plaintiff did not assume the risk. Taking his version he did not know of the former breakings of this belt and knew very little about belts or their construction or sufficiency. There was nothing to put him on inquiry. The defect as to him was latent. There is nothing to show that he knew whether the belt was riveted or glued or laced. There is a fair inference from the testimony that the belt was improperly or insufficiently glued together the night before. We perceive no error on this question of assumption of risk.

It is next contended that assuming the belt, having broken or pulled apart the night before, was improperly glued by another employee of the defendant, that this was the act of a fellow-servant of the plaintiff for which the master is not liable. It is also argued that the act of repairing the belt was an ordinary step in the operation of the mill which the master might intrust to a fellow-servant of the plaintiff. That the plaintiff and the belt repairer were fellow-servants is not borne out by the evidence. Schreiber, the belt repairer, had special charge of that work. The plaintiff had nothing to do with the repair of belts. The fellow-servant rule does not go so far as to relieve the master from liability for negligently

furnishing an unsafe appliance because after the appliance was disabled and out of commission some other servant of the same master, regularly charged with the duty of making repairs, without properly repairing the belt puts it back in its place of operation. It is under such circumstances furnished by the master. This is quite a different situation from one in which a crew of men are operating an appliance, with the duty resting upon any one and all to adjust or repair it in the progress of their work. *Beach v. Bird & W. L. Co.* 135 Wis. 550, 116 N. W. 245, and cases cited.

Considering the evidence most favorable to respondent, his injuries consisted of a scalp wound, the crushing of his right eye, a necessary surgical operation, and loss of the right eye with some impairment of vision in the remaining eye, headache and dizziness, and the ordinary loss of capacity which results from the loss of an eye, and the disfigurement or else the inconvenience of wearing a glass eye. The appellant contends that the damages of $6,000 are excessive and seeks a reversal or a new trial at the hands of this court upon that ground.

This court is engaged in the decision of questions always important and sometimes great, so far as they affect the people of this state. From these decisions follow rules of law for all the people of the state. No matter how imperfectly the work may be done, the work itself is a great work and the duties of the court onerous and the responsibilities heavy. It ought not be and it seldom is required to pass upon questions of fact. It is not consistent either with the duty or dignity of this court to indulge in petty parings of one or two thousand dollars or of small percentages from verdicts in cases of unliquidated damages. It is impossible to proceed by rule in such matters. To some men the value of strong, healthy life, in possession of all members and faculties and free from pain and decrepitude, is much higher than it is to others. Some regard money more highly than others. There is no market value to guide us. Our decisions should be by rule wherever

possible, so as to exclude arbitrariness and caprice. The disregard of rules is neither a good habit nor a good precedent. The law has appointed the jury and the circuit judge to pass on these questions of fact which are incapable of solution by rule. Circuit judges should understand this. They cannot shift that responsibility onto this court, but they themselves must exercise it. For the correctness of such exercise they must answer to that forum to which all public officials must answer for the administration of their offices. In cases of gross and manifest abuse in this respect, where the amount awarded by the jury is indicative of passion or prejudice and the circuit judge has failed to act properly, this court will exercise its undoubted revisory power and reduce the verdict by granting a new trial conditionally, as the circuit judge should have done. But we cannot intermeddle in ordinary cases. This court has declined to interfere with a verdict for $7,000 damages, based upon the loss of an eye, in the case of *Ruck v. Milwaukee B. Co.* 148 Wis. 222, 134 N. W. 914. We would have been better pleased with the result in the instant case had the circuit judge reduced the amount of this recovery by granting a new trial conditionally. But upon the record before us we must presume we have the judgment of the jury and that of the circuit judge that this verdict is not excessive. Under such circumstances we will not interfere with such a verdict. Justices MARSHALL and VINJE do not, however, agree with the court upon this point, but think the recovery in this case should be substantially reduced.

We find no error in the record sufficiently prejudicial to appellant to warrant a reversal.

*By the Court.*—Judgment affirmed.