[Civ. No. 3966. Third Appellate District.—December 19, 1929.]

PAUL S. WRIGHT, Plaintiff and Respondent, v. SOUTH-
ERN COUNTIES GAS COMPANY (a Corporation)
et al., Defendants; JUAN JIMINEZ, Appellant.

H. S. Clewett for Appellant.

A. W. Sorenson and Henry Brown for Respondent.

PLUMMER, J.—This action was prosecuted to recover damages for and on account of injuries suffered by the plaintiff by reason of an explosion of gas in a certain apartment house owned by the defendant Juan Jiminez. The gas was furnished by the defendant Southern Counties Gas Company; the jury returned a verdict against the defendant Juan Jiminez in the sum of $8,000, and from the judgment entered thereon the defendant Jiminez appeals.

The evidence upon which the verdict rests is substantially as follows: The transcript shows that on the nineteenth day of May, 1926, and prior thereto the defendant Juan Jiminez was the owner and in exclusive control of a certain four-flat building located in San Pedro. It was in one of the flats of this building that the explosion occurred. The flat in question had been occupied until about March 18, 1926, and up to that date had been rented to and occupied by one Mrs. Rose Bartlett. On March 18, 1926, Mrs. Bartlett moved out of the flat and it remained unoccupied until the date of the explosion on May 19, 1926. It appears from the testimony that when Mrs. Bartlett left the flat she ordered the Gas Company to turn off the gas. This order was executed by the Gas Company. In turning off the gas the company not only turned off the stop-cock controlling the passageway for gas into the meter, but sealed and locked the same; the seal used for this purpose consisted of two pieces of iron which fitted over the valve, protecting it from interference and making it inaccessible so long as the seal remained with its catch unbroken. This catch, however, does not appear to have been made of very substantial

material, and a slight blow from a hammer or other like instrument would readily break the catch. With the catch destroyed, the seal would require a new catch in order to render it again effective. An inspection of the meter was made by the Gas Company on April 19, 1926. On that date the lock was in place and the meter closed, and an inspection of the dial showed that no gas had passed through the meter since the reading on March 18th. It also appeared that the lock was in the position in which it was placed and left by the Gas Company on the date that the meter was sealed. The testimony further shows that in the living-room of the flat in which the explosion occurred there was a gas-cock used for turning on and turning off gas when the gas-heater in the living-room was being used. After the explosion, which occurred on the nineteenth day of May, 1926, an inspection of the premises revealed that this gas-cock was open, and that the gas-heater in the room in which the explosion occurred was situated a few feet from the gas-cock just referred to, but was not connected therewith.

As we have said, the testimony shows that the flat in question was under the exclusive control of the defendant Jiminez. No other person had a key thereto. After Mrs. Bartlett left the premises, and preceding the date of the explosion, the defendant Jiminez visited the premises several times. At a date approximately two weeks before the explosion the defendant Jiminez moved certain furniture into the flat in question, including a small gas-heater, which he placed in the living-room a short distance from the gas-cock referred to, this being the gas-heater which we have heretofore mentioned. After the explosion a reading of the gas-meter showed that 97,100 cubic feet of gas had passed through the meter from the time it was read on April 19, 1926, to May 19, 1926. The lock and seal on the meter were found broken and the gas turned on. Testimony was introduced by witnesses familiar with the flow of gas, who testified that it would take from twelve to fourteen days for 97,100 cubic feet of gas to pass through the aperture the size of the one in the living-room where the gas-cock was found open. The transcript contains evidence to the effect that the defendant Jiminez demonstrated the kitchen stove for the plaintiff on the day of the explosion, just prior thereto. The testimony in this particular is to the effect that on the day in question

the plaintiff and the defendant Jiminez went to the flat for the purpose of making an inspection of the same. The plaintiff's visit was to determine whether he would rent the flat. The plaintiff's testimony is to the effect that he and the defendant Juan Jiminez went into the kitchen, where the defendant Jiminez lighted a match, turned on the gas in the kitchen stove at the various burners, and that in so doing the pilot light was first used, and then that said defendant turned on the gas of the respective burners, lighting the same. This testimony was contradicted by the defendant Jiminez. From the kitchen the plaintiff and the defendant Jiminez passed through other rooms and into the living-room containing the open gas-cock. Neither of the parties detected the odor of gas. While there the plaintiff struck a match for the purpose of lighting a cigar. An explosion immediately occurred, severely injuring the plaintiff as well as the defendant. The transcript also contains testimony to the effect that the range of explosibility of natural gas is from five per cent to twelve per cent; that a different proportion might burn if once ignited, but that it would not detonate.

It is also admitted upon this appeal that no one other than the Southern Counties Gas Company had the right to interfere with the lock and seal upon the meter which we have mentioned. That it had been interfered with, however, by someone, is likewise unquestioned. While the testimony shows that the defendant Jiminez had exclusive control of the apartment in which the explosion occurred; had visited the same several times after it had been vacated by the previous tenant; was in the apartment about two weeks preceding the explosion and placed therein certain furniture, including a gas-heater near where the open gas-cock was found; that it would take about two weeks for 97,100 cubic feet of gas to pass through the open gas-cock; that the defendant Jiminez knew that the gas was flowing through the meter by reason of his having lighted the gas flowing through the kitchen stove, which would be fed by the same meter; it is contended that this testimony is not sufficient to support the verdict. In this particular our attention is called to a number of cases supporting the text found in 20 Ruling Case Law, on page 56, to the effect that "the mere ownership of land or buildings does not render one liable for in-

juries sustained by persons who have entered thereon or therein. . . . Nor is there any presumption of negligence on the part of an owner or occupier merely upon a showing that an injury has been sustained by one while rightfully upon the premises. The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owners or occupants, and not known to the persons injured, that a recovery is admitted." This statement of the rule is unobjectionable so far as it goes, but it stops short of stating the full rule as to liability of an owner of the premises involved. If the circumstances are such as to show that the owner, with reasonable diligence, might have become aware of the peril, or should have known the same, liability attaches. The text further quoted by the appellant is in the negative form, and is: "On the other hand, an injury is not actionable if it could not have been foreseen or reasonably anticipated." (This is found on page 13 of the same volume.) ■ The authorities are numerous to the effect that a defendant is not bound to keep his premises absolutely safe, but it is universally held that an owner of premises must use ordinary care to keep the premises in a safe and suitable condition so that they will not unnecessarily or unreasonably expose anyone to danger who may lawfully be thereon. It is also well settled that in actions based upon negligence, that what an owner of premises reasonably should have known, he will be held to have known. Again, in applying the law relative to the duty of an owner of premises, all the inferences which a jury may properly draw from the testimony introduced must be kept in mind. Thus, the testimony in this case shows that the meter was locked and sealed. It likewise shows that someone tampered with the lock and seal and turned the stop-cock so that the gas would again flow through the meter. It also shows that it would require about two weeks for the quantity of gas to flow through an aperture the size of the open gas-cock in the living-room, registered by the meter. It likewise shows that the defendant had control of the flat in question; that he was in the flat about two weeks before the explosion; had taken furniture there preparatory to renting the same, and had placed in the living-room, near where the open gas-cock was

found, a gas heating stove, and that on the day of the explosion he tested the gas in the cook stove in the kitchen. If, upon this testimony, the jury was warranted in drawing the inference that the defendant had tampered with the lock and seal on the gas-meter, and had opened the gas-cock in the living-room and subsequently failed to close the same, then and in that case the verdict is amply supported. Again, if the jury was warranted in drawing the inference that the one who tampered with the lock and seal on the gas-meter and turned the gas therein, also opened the gas-cock in the living-room to ascertain if the gas was flowing through the same, then and in that case the natural inference would be that the defendant negligently failed to close the gas-cock in the living-room. There is no direct testimony to the effect that the defendant opened the gas-cock in the living-room or that he tampered with the gas-meter, but there is plenty of testimony to the effect that the defendant was upon the premises at about the time when the tampering must have taken place, and that the gas-cock was opened by someone and left open near where the defendant had placed a gas-heater. The transcript contains no testimony of any person having broken into or trespassed upon the premises in question, and during all the time the defendant Jiminez had possession of the key to the premises and the premises were inaccessible to any person other than the defendant Jiminez. This is shown by reason of the exclusive control of the premises by the defendant Jiminez and the absence of any testimony whatever that any other person had trespassed upon the flat. If, upon this testimony, and all that we have set forth, the jury had a right to infer that the defendant was the one who opened and left opened the gas-cock in the living-room, then and in that case the verdict should be upheld. ■ Again, it is further argued by the appellant that it is not shown that the negligence of the defendant Jiminez was the sole cause of the injury, or rather, as stated by the appellant, that the negligence of the defendant Jiminez was not the proximate cause of the injury, the assumption being that the proximate cause of the injury was the tampering with the lock and seal on the gas-meter. However, we do not need to go into this question further than to state that if the gas-cock had not been left open in the living-room, the tampering with the meter would have occasioned no in-

jury. The fact that another party's act may concur in the negligence does not furnish any defense. The law with reference to concurrent negligence is thus stated in 45 C. J., page 920: "As a general rule it may be said that negligence, to render a person liable, need not be the sole cause of the injury. It is sufficient that his negligence, concurring with one or more efficient causes other than plaintiff's fault, is the proximate cause of the injury, so that where several causes combined to produce injuries, a person is not relieved of liability because he is responsible for only one of them, it being sufficient that his negligence is an efficient cause without which the injury would not have resulted." The text cited further shows that all that is necessary to be shown is that the person sought to be charged was responsible for one of the causes which united in producing the injury. Again, as shown by the text in the same volume on page 918, "Where an act or omission is negligent it is not necessary, to render it the proximate cause, that the person committing it could or might have foreseen the particular consequences or precise form of the injury or the particular manner in which it would occur if, by the exercise of reasonable care, it might have been foreseen or anticipated that some injury would result." Common understanding is all that is necessary to anticipate not only a possible but a probable explosion as resulting from escaping gas.

It would serve no useful purpose to review all the authorities cited by the appellant, but we will give some attention to the principal case upon which the appellant relies, to wit, the case of *Leonard* v. *Enterprise Realty Co.*, 187 Ky. 578 [219 S. W. 1066], and reported with annotations in 10 A. L. R. 238. The syllabus in that case is in the following words: "A property owner is not liable for injury to one whom he permits to inspect the premises with a view of leasing them, by explosion of gas escaping from a pipe which an out-going tenant had disconnected without shutting off the flow of gas, without knowledge of the property owner or reasonable opportunity on his part to discover the fact." A recital of the facts set forth in the opinion in that case demonstrates the inapplicability of anything there said to the case at bar. The facts are that the plaintiff, desiring to rent an apartment, passed in front of an apartment belonging to the Realty Company, between the hours of 4 and 5

o'clock in the afternoon, and as he passed by he noticed a moving van taking furniture from the apartment, and thereupon he obtained a key to a back door of the apartment, from one of the men moving the furniture. The defendant went immediately to the office of an agent of the Realty Company, reaching there about 5 P. M., reported he had a key, and asked permission to look at the apartment, which was granted. After supper appellant and his wife went to the apartment, arriving there about 6:30 P. M. Appellant told his wife to remain on the sidewalk while he went around to the rear of the building and unlocked the rear door so that he could come through and let her in the front way. Appellant unlocked the back door which leads to a kitchenette. From here the appellant walked into the front hall. It being dark he struck a match to find his way, and as he did so an explosion took place, severly injuring the appellant. Following the explosion investigation disclosed an open gas-pipe in the kitchenette, from which the gas-stove had been disconnected, the theory of the appellant being that the man who disconnected the stove failed to shut off the gas, etc. It was held that the plaintiff could not recover, the facts showing conclusively that the owner of the premises had had no opportunity to examine the same between the time when the former tenant had removed therefrom and the entering of the plaintiff. No knowledge of the condition of the premises, as left by the out-going tenant, could be imputed to the owner by reason of the lack of opportunity. The plaintiff by his own act and conduct, and by his own testimony showed such lack of knowledge and lack of opportunity to acquire knowledge on the part of the owner. A recital of the facts disclosed in the Leonard case furnishes a complete answer to the appellant's extended argument based thereon.

In addition to the inferences which may be drawn by the jury from the facts which we have culled from the record, the respondent urges the doctrine known as *res ipsa loquitur*. Many definitions of this rule have been given, but the quotation used by this court found in the case of *Phoenix Assurance Co.* v. *Texas Holding Co.*, 81 Cal. App. 61 [252 Pac. 1082], taken from the case of *Judson* v. *Giant Powder Co.*, 107 Cal. 549 [48 Am. St. Rep. 146, 29 L. R. A. 718, 40 Pac. 1020], will answer as well as any: "When a

thing which causes an injury is shown to be under the management of the defendant, and the accident is such that in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant that the accident arose from want of care.'' What this court said in the case of *Phoenix Assurance Co.* v. *Texas Holding Co.*, applying the doctrine of *res ipsa loquitur* to the circumstances there involved, we think applicable to the circumstances disclosed in this case.

This court again, in the case of *Brown* v. *Davis*, 84 Cal. App. 180 [257 Pac. 877], had occasion to apply the same doctrine, and what was there said is applicable here.

In *Van Horn* v. *Pacific Refining & Roofing Co.*, 27 Cal. App. 105 [148 Pac. 951], the doctrine was applied, and in answer to the appellant's contention that it could not apply by reason of the possibility of some other person being liable, the court used the following language: ''But the appellant contends that because the third possibility exists, the doctrine of *res ipsa loquitur* cannot be given application. In support of this contention counsel for the' appellant argues that the mere fact that persons other than the defendant, or its employees, were working in and about the building, and had access to the particular floor where this steam-pipe was located, would be sufficient to prevent the application of the rule, because some one or other of these might possibly have so struck or tampered with this pipe as to have caused the loosening of its cap to such an extent that it would be liable to blow off at any moment under pressure. We think this argument, unsustained as it is by any semblance of evidence or proof tending to show such interference with this pipe or cap, carries the possibilities in cases of this kind entirely too far.'' That was a case in which the plaintiff was injured by the blowing off of a cap placed insecurely upon a steam-pipe. The court further in its opinion goes on to say that if such possibilities are allowed to prevent the application of the doctrine of *res ipsa loquitur*, it would in effect entirely eliminate the doctrine.

A good case illustrating where the doctrine of *res ipsa loquitur* does not apply is that of *Harrison* v. *Sutter St. Ry. Co.*, 134 Cal. 549 [55 L. R. A. 608, 66 Pac. 787], where the question presented was whether the operators of a street

railway car or the driver of a brewery wagon were negligent in causing the collision of the wagon with the street-car. Thus, where the negligence of one is sufficient to occasion injury without the negligence of the other party, no inference of negligence as against both can be drawn. On the other hand, if the collision could not have occurred without the concurrent negligence of both parties, then and in that case the doctrine would have applied. In the case at bar the doctrine applies as against the owner of the premises because, irrespective of whether the Gas Company was negligent, or whether some unknown person broke the seal and the lock, no injury would have followed if the gas-cock in the living-room had not been left open. The one who left the gas-cock open, or who, by reasonable inferences from the testimony, may be concluded to have left the gas-cock open, stands alone in his negligence, irrespective of what others may have done. If both defendants in this case were negligent, both would be liable. (*Merrill* v. *Los Angeles Gas & Elec. Co.*, 158 Cal. 499 [139 Am. St. Rep. 134, 31 L. R. A. (N. S.) 559, 111 Pac. 534].) An explosion of gas was involved in that case. The court said, quoting from the syllabus: ''Where an explosion of gas, causing damage to a patron of a restaurant, results from the joint negligence of the Gas Company in not discovering and reporting a leak in its pipes, and of the restaurant-keeper in bringing a light in contact with the gas whereby it explodes, the person damaged may recover from either or both, at his election.''

The case of *Prest-O-Lite Co.* v. *Steel*, 182 Ind. 593 [Ann. Cas. 1917A, 474, 106 N. E. 365], relied upon by the appellant, showing that the doctrine of *res ipsa loquitur* could not apply, is based upon circumstances showing that an attempt was being made to hold the defendant liable for the acts of an independent contractor. Nothing of the kind is involved in this action.

That the defendant Jiminez did not know or realize that gas had been escaping into the living-room when he entered, accompanied by the plaintiff, is not material. If the circumstances disclosed are sufficient to show that he should have known that gas was escaping, and that gas would escape therein if the gas-cock heretofore mentioned were left open, and the circumstances are sufficient to warrant the jury in concluding that the defendant Jiminez was the person who

left the stop-cock open, then the defendant's actual knowledge is immaterial. As said in *Goldbrecht* v. *Beckwith*, 82 N. H. 415 [52 A. L. R. 858, 135 Atl. 20]: "One under a duty to use care for which knowledge is necessary cannot escape liability for negligence because of voluntary ignorance." In addition to what we have said relative to the defendant Jiminez having lighted the gas in the kitchen stove, we may state that the transcript discloses testimony strongly corroborative of the plaintiff's version of this occurrence. The fact that the plaintiff was the one who struck a match for the purpose of lighting a cigar, with the resultant explosion, does not suffice to charge him with negligence. It has been held that even where the injured invitee or licensee smells the gas and lights a match, the question of his contributory negligence is for the jury. (*Dowler* v. *Citizens' Gas & Oil Co.*, 71 W. Va. 417 [Ann. Cas. 1914C, 341, 76 S. E. 845].)

The record to which we have referred and the authorities cited we think sufficient to take the case to the jury and also to support its verdict.

■ It is next contended that the court erred in its instructions to the jury, and especially in refusing to give an instruction to the jury requested by the defendant, which reads as follows: "You are instructed that unless you believe from the evidence that the defendant Juan Jiminez ought reasonably to have foreseen that injury to the plaintiff might probably happen as a result of entering said premises, then your verdict must be in favor of the defendant Juan Jiminez." An examination of the record shows that this instruction is completely covered by a subsequent instruction given by the court at the request of the defendant, and modified by the court to make it an accurate statement of the law. This instruction reads: "You are instructed that one is not liable for negligence where no injurious consequences could have reasonably been contemplated or foreseen as the result of the act or omission complained of, and if you believe from the evidence that no injurious consequences could reasonably have been contemplated or foreseen by defendant Juan Jiminez as the result of inviting plaintiff to enter said premises, then your verdict must be for the defendant Juan Jiminez." The modification consisted in the insertion of the words "or foreseen."

It would unduly extend this opinion to set forth and analyze the voluminous instructions given by the court, which covered every possible phase of the questions presented to the jury. We content ourselves with the statement that a careful reading of the instructions leads inevitably to the conclusion that the court in nowise erred to the prejudice of the appellant. The instruction covering the doctrine of *res ipsa loquitur*, and the effect given thereto, is amply supported by the reasoning and the authorities cited by this court in the case of *Brown* v. *Davis, supra*. As to the instruction advising the court to find in favor of the defendant Southern Counties Gas Company, on the cross-complaint filed by the defendant Juan Jiminez, it is sufficient to say that this appeal is taken only from the judgment in favor of Paul S. Wright against the defendant Juan Jiminez, awarding the plaintiff the damages heretofore mentioned in this opinion. ■ In this particular it is urged that the damages awarded the plaintiff were excessive. This assignment of error is not followed by anything which would indicate anything of merit. All that is stated is that the total special expenses and loss incurred by the plaintiff by reason of his injuries amounted to the sum of $2,000, leaving $6,000 as compensation for pain, suffering, etc. As the assignment is only in general language, and nothing cited to support the assignment, it is sufficient generally to state that an examination of the testimony relative to the plaintiff's injuries shows that the jury did not act improperly or award damages from any improper or illegal motive.

■ It is finally urged that the court erred in denying appellant's motion for a new trial. This motion was based upon the collapse of the plaintiff during the course of his examination upon the witness-stand. Affidavits were submitted to the court, *pro* and *con*, on the question as to whether such collapse was actual or simulated. The occurrence took place in the presence of the trial court, which gave the trial court a basis for its ruling, which is lacking here. However, placing our decision wholly upon the affidavits presented, we are unable to say that the court abused its discretion in denying the appellant's motion.

The judgment of the trial court is affirmed.

Thompson (R. L.), J., and Finch, P. J., concurred.