[Civ. No. 10809. First Appellate District, Division One.—November 25, 1939.]

CHARLOTTE M. HOHNEMANN, a Minor, etc., et al., Appellants, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Respondent.

Bardin, Harrington & Bardin, J. A. Bardin and Paul C. Dana for Appellants.

Thomas J. Straub and W. H. Spaulding for Respondent.

WARD, J.—This is an appeal on behalf of Charlotte M. Hohnemann and William H. Hohnemann, minors, by their guardian Annie Doud, from a judgment rendered in favor of defendant Pacific Gas and Electric Company, a corporation, following the granting of its motion for a directed verdict.

The complaint alleged that the mother of the minors, Charlotte O. Hohnemann, was the owner of certain premises located at 212 Lee Avenue in San Francisco; that the defendant company was engaged in the sale, manufacture and distribution of gas to the public generally for domestic and other uses; that for such purpose it maintained a distributing system consisting of mains, pipes and necessary fixtures and appurtenances to control and regulate the flow of gas from its source to points of distribution, including the premises herein referred to; that the supply of gas to this building was so carelessly, negligently and recklessly managed and con-

trolled that it accumulated in and about the premises, as the result of which an explosion of great force and violence occurred, fatally injuring the mother of the minors. The recitals of the complaint are not denied except the allegation of negligence and in this connection defendant alleged "that such supply and distribution of gas was under the direction, management, control and regulation of defendant only to said building, but that defendant lost all direction, management, control and regulation of such gas when the same entered said building, and that said gas upon the entry thereof into said building was solely under the direction, management, control and regulation of the owner of said building, and was purchased by said owner and delivered to said owner at a point outside said building".

The premises, located on the northeast corner of Lee and Holloway Avenues in San Francisco, consist of a two-story building containing a series of stores and apartments, which are numbered, beginning with a barber shop directly on the corner, 200 to 214 Lee Avenue. A small alley opening on Holloway Avenue is used as a tradesmen's entrance and runs along the rear of the premises, paralleling Lee Avenue. Just inside the entrance, on the left wall approximately $7\frac{1}{2}$ feet from the ground and directly behind the barber shop, are located the gas meters for the property. From the alley entrance, meters for apartments 204, 212 and 200 are located in a group, a meter for 206 being the fourth and located a little apart from the first three. Meters for 212 and 206 are the only ones to be given particular consideration in this case. These two apartments had been vacant for some time, but the day before the accident new tenants had moved into 206 and about 8 o'clock of that evening an employee of the defendant company arrived to turn on the gas for their use. There is evidence that he placed a ladder underneath the cluster of the first three meters, a short distance away from 206, and, holding a flashlight, started to work; that some difficulty was experienced in bringing the service into apartment 206, but after communicating with its occupants he returned to work at the meter location and finally the gas flow was accomplished. The next morning, when Mrs. Hohnemann entered apartment 212, which she was renovating, she lit a cigarette and an explosion of gas occurred resulting in her death.

 Evidence was presented from which an inference might arise that the pipe within apartment 212 was uncapped at the time of the explosion. The evidence also revealed that someone had taken out the closed swivel which had been in the 212 meter from the time the last tenant moved out, inserted an open swivel, and opened the valve. It was respondent's contention that the new tenant in 206 had been down in the alleyway working around the gas meters the afternoon before the explosion. Appellants contend that defendant's employee was responsible for the flow of gas through the meter into apartment 212. The tenant and the employee each denied responsibility.

The cause of the accident might have been either the removal of the closed swivel and the insertion of the open one in the meter, and the opening of the valve into the pipes connecting with 212, or the fact that the pipe in the apartment had been left uncapped. Likewise the cause of the explosion might have been traceable to both alleged negligent acts. In *Walters* v. *Bank of America etc. Assn.*, 9 Cal. (2d) 46, 49 [69 Pac. (2d) 839, 110 A. L. R. 1259], the court said: "A directed verdict may be granted, when, disregarding conflicting evidence, and indulging every legitimate inference which may be drawn from the evidence in favor of the party against whom the verdict is directed, it can be said that there is no evidence of sufficient substantiality to support a verdict in favor of such party, if such a verdict had been rendered. (*Estate of Flood*, 217 Cal. 763, [21 Pac. (2d) 579]; *Parker* v. *James Granger, Inc.*, 4 Cal. (2d) 668 [52 Pac. (2d) 226].)" The vital issue might have been determined favorably to plaintiffs' theory; that is, an inference might have been fairly and reasonably deduced from the circumstantial evidence that the employee ascended the ladder and negligently turned on the gas through the meter connected with apartment 212, and that this negligence standing alone was the cause of the accident. (*Sawyer* v. *Southern California Gas Co.*, 206 Cal. 366 [274 Pac. 544]; *Chutuk* v. *Southern Calif. Gas Co.*, 218 Cal. 395 [23 Pac. (2d) 285]; *Hilson* v. *Pacific Gas & Elec. Co.*, 131 Cal. App. 427 [21 Pac. (2d) 662].) In *Oklahoma Natural Gas Co.* v. *Jopling*, 121 Okl. 10 [247 Pac. 69, 72], the court said: "In our opinion, where there is more than one theory as to the cause of gas passing through a certain channel and the different theories are supported by circumstantial evidence, the jury

may then adopt such theory as in their judgment is more plausible, provided the same is reasonably supported by the evidence.''

The order for the directed verdict was based specifically on the trial court's conclusion that no negligence on the part of the defendant had been proven. The court said: ''So, in anything that I have to say here, I am not passing upon any question of the contributory negligence alleged on behalf of Mrs. Hohnemann.'' If, regardless of the reasoning of the trial court, the directed verdict may be sustained upon any substantial theory, the judgment must be affirmed (*Rapp* v. *Southern Service Co.*, 116 Cal. App. 699 [4 Pac. (2d) 195]; *Davey* v. *Southern Pacific Co.*, 116 Cal. 325 [48 Pac. 117]); conversely, if the facts and inferences, as contended by appellants in the present case, do not justify an affirmance, a reversal is necessary. Hence we find it necessary to examine and pass upon the theory of the alleged contributory negligence of the deceased, and the evidence tending to uphold defendant's contention in that regard.

Respondent contends that the owner, Mrs. Hohnemann, violated the gas appliance ordinance by leaving the gas pipe in the apartment uncapped, and that the accident was due to her contributory negligence in this respect; also, that the lighting of a cigarette in an apartment containing an uncapped gas pipe was contributory negligence, and that the directed verdict was justifiable on proof of either or both of these facts. We express no opinion on the merits as to whether the above constituted contributory negligence.

In a case such as here presented, wherein the defendant alleges contributory negligence, and the evidence shows that such contributory negligence was predicated upon the theory that decedent had violated an ordinance providing that it shall be unlawful to remove or disconnect any gas fixture or gas appliance without capping or plugging with a screwed joint fitting the outlet from which said fixture or gas appliance was removed, even assuming the evidence showed that decedent was responsible for the uncapping, unless the violation of the ordinance was the proximate cause of the explosion which resulted in the death of Mrs. Hohnemann, it was immaterial. In other words, the causal connection between the violation of the law, if any, and the injury, must appear. (*Baillargeon* v. *Myers,* 180 Cal. 504, 507 [182 Pac. 37]; *Anderson* v. *I. M. Jameson Corp.,* 7 Cal.

(2d) 60 [59 Pac. (2d) 962].) The jury might have found that the defendant corporation's employee failed to take ordinary precaution to ascertain whether he had set in motion the meter connected with the unoccupied apartment 212 and as to whether there was an uncapped pipe. Such negligence of defendant's representative may have been the proximate cause of the explosion and if the jury should so find, the violation of the ordinance by decedent would be immaterial.

The appeal herein presents the novel anomaly of both litigants claiming the doctrine of *res ipsa loquitur* to be applicable in determining the *quantum* of evidence necessary to maintain their respective positions. Plaintiffs contend that the meter was owned and under the exclusive management and control of the defendant, and that the accident was such as in the ordinary course of things does not occur if those in charge use proper care. Defendant's claim is that the pipe from which the gas escaped was inside the closed apartment and that decedent had the sole and exclusive control of the pipe; that therefore the burden of proof is upon plaintiffs to explain the uncapped condition of the pipe and the leak of gas therefrom. Neither contention is sound.

The rule of *res ipsa loquitur,* embodied in the phrase "the thing speaks for itself", has been held at times to include within its indefinite scope the modern use of vehicles, machines, articles of different kinds and even livestock when the owner, operator or person in control, or party responsible for the maintenance or management of the instrumentality, is, by reason of his accessibility, in a position to give an explanation of the occurrence of the accident. On account of fast changing phases of modern life, no precise rule may be stated to cover this doctrine except to say that the injury must be such as would not have occurred except through the negligent construction or improper use of the instrumentality by the party having exclusive control thereof.

Regardless of its enlarged scope, we still fail to agree with defendant that the maxim of *res ipsa loquitur* may be invoked by a defendant against a plaintiff under the issues and facts of this case. No authority upholding such theory has been suggested. A plaintiff called upon under the maxim of *res ipsa loquitur* to explain the cause of an injury, would be doing only that which is now required, namely, proving,

by a preponderance of evidence, the affirmative allegations of the complaint.

Conceding for the sake of discussion, but not deciding, that under certain facts not involved in this case the maxim of *res ipsa loquitur* may be invoked by each side, the instrumentality causing the injury must be under the exclusive control of the party against whom the rule is invoked. In this case the meter was exclusively owned and controlled by defendant corporation; the pipe and cap thereon exclusively by the decedent. In other words, neither the decedent nor the defendant had control of both the swivel connection of the meter and the pipe and cap thereon in the apartment. The doctrine of *res ipsa loquitur* is not applicable unless the party against whom the rule is invoked has not only accessibility to the facts of the case but a better opportunity, based upon knowledge of surrounding facts, of explaining the occurrence. (*Scellars* v. *Universal Service,* 68 Cal. App. 252 [228 Pac. 879].) Under the facts of this case the rule was not applicable to either side. The difference between the case of *Chutuk* v. *Southern Calif. Gas Co., supra,* relied upon by respondent on this point, and the present one is that in the Chutuk case the defendant gas company, irrespective of the location either on or off of plaintiffs' property, of the gas pipe and riser causing the injury, retained complete charge and control of such instrumentality. In this case the instrumentality was under the control of decedent or defendant, but not of both.

Whether or not the lighting of a cigarette in an apartment where an uncapped gas pipe terminated was contributory negligence under the allegations of the answer, was a question of fact to be determined by the jury; and since the evidence presented issues of fact of sufficient substantiality to raise an inference of negligence, the determination of the cause should have been submitted to the jury.

The judgment is reversed.

Peters, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 23, 1939, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 22, 1940.