[Civ. No. 2975.    Fourth Dist.    Dec. 30, 1942.]

ELMER F. GERHART, Respondent, v. SOUTHERN CALIFORNIA GAS COMPANY (a Corporation), Appellant.

426

T. J. Reynolds and Neil G. Locke for Appellant.

Raymond E. Hodge and Carl B. Hilliard for Respondent.

GRIFFIN, J.—This action is one in which the plaintiff and respondent sought damages, both general and special, for personal injuries sustained in a gas explosion. Appellant seeks reversal of the judgment principally upon the ground that the trial court erred in applying the doctrine of res ipsa loquitur.

Respondent was an apprentice plumber employed by the county of San Bernardino. He and his superior, one Tully, also employed by San Bernardino County, were delegated to do the necessary plumbing work incident to the installation of a new courthouse heating system and relocation of gas piping on the courthouse grounds. This required running certain pipe from the courthouse to a vault constructed by the county, in which a gas meter was to be located. The

assembling of certain pipes and valves by the county controlling the intake of the gas was also required in the vault. Defendant and appellant, the public utility supplying the gas, by reason of the new work was required to move its meter from under the courthouse into the vault, to run pipe as a source of supply of gas to that new location, to make the necessary installations and connections in the vault between the source of supply and the meter, and to connect the meter to the pipes and valves installed by the respondent for the county of San Bernardino. The day previous to the explosion, respondent and his superior worked in the vault, as did appellant's employees. The meter was moved and connected and gas was introduced into the courthouse through the new piping system. Respondent and his superior did not test their work after completion, but appellant's employees testified that they, prior to their leaving, thoroughly tested all pipes which they had installed and found no leaks. The next morning the respondent went to the vault to finish certain work left incomplete by him the day previous, and shortly after he entered an explosion occurred. He sustained serious burns and other injuries. Within a short time thereafter all the piping in the vault was tested in the presence of the county's plumbing foreman, the respondent's superior, and with the exception of a small leak found in the county piping (too small alone to have caused the explosion), no leaks were found. The source of the gas which exploded was never discovered.

At the trial respondent urged and the trial court held that the doctrine of res ipsa loquitur was applicable. The trial court found for the plaintiff and respondent and signed findings of fact directly disclosing that its decision was based on the inference permitted to be drawn upon application of the doctrine of res ipsa loquitur. The specific finding in this respect is as follows: ". . . that the defendant installed and exclusively owned, controlled and managed the pipe connecting the outlet side of the temporary meter with the pipes of the County of San Bernardino within said vault, together with the supply, flow, and existence of gas in such connecting pipe . . ." That ". . . the defendant furnished and installed pipes connecting said gas mains to the aforesaid pit, and installed in said pit a temporary connection and temporary gas meter to be subsequently replaced by the installation of

a permanent gas meter; that as a part of said temporary connection the defendant also installed certain valves, the purpose of which was to ultimately provide a convenient point for the connection and installation of the permanent meter. That it is also true that on or prior to the 26th day of June, 1940, the County of San Bernardino furnished and installed pipes connecting to said pit the heating system and other gas house pipes in the buildings owned and maintained by said County of San Bernardino, and installed in said pit a system of pipes and valves to permit and control the flow of gas from said pit through such connecting pipes to said heating system and house pipes; that it is true that said pipes and valves were installed by the agents and employees of the County of San Bernardino, that plaintiff was one of such agents and employees, and that plaintiff on the 26th day of June, 1940, was actively engaged in installing said pipes and valves in said pit; and that it is true that on the 26th day of June, 1940, the pipes, meters and valves installed in said pit by defendant, and the pipes and valves installed in said pit by the County of San Bernardino were connected, and gas was permitted to flow through said connected pipes and valves into the house pipes of the County of San Bernardino." And "that it is true that on or about 8 o'clock A. M. of June 27, 1940, the plaintiff removed one of the manhole covers on said pit or vault and descended into the same for the purpose of doing further work upon the system of pipes and valves installed in said pit or vault by the County of San Bernardino; that said pit was then filled with large quantities of combustible and inflammable gas which then became ignited and thereupon exploded, and by reason thereof plaintiff sustained injuries. That it is true that the exact source of gas within the pit, or point and time of escape, if any, of such gas is unknown." And "that defendant at all times had the sole and exclusive ownership, control and management of the pipes, valves and other appliances installed from its street main to and including the outlet side of the temporary meter box located in the vault, and the pipe connecting said outlet side of the aforesaid meter box with the pipes installed by the County of San Bernardino within said vault, and further finds it is true that at all times the defendant had the sole and exclusive ownership, control and management of the supply, flow and

existence of gas within said pipes and said vault." And "that the accumulation of gas in the vault and the resulting explosion thereof . . . was directly and proximately caused by the carelessness, negligence and recklessness of the defendant." Damages in the sum of $10,000 were awarded. After a motion for new trial was denied appellant appealed.

The question whether appellant would be liable under any other theory than under the doctrine of res ipsa loquitur has been clarified by the pleadings and by respondent's own statement in his brief which recites: "We concede that the doctrine of *res ipsa loquitur* was relied upon by respondent at the time of trial, applied by the trial court, and is the supporting doctrine or theory upon which the judgment was entered in this action." We will therefore confine our efforts to a discussion of that question only.

The concrete pit here involved was owned and constructed by the county of San Bernardino. It was approximately 12 feet long, 7 feet wide and 6 feet deep. The top of it had a covering over it. Entrance to the pit was gained by means of a manhole and a ladder. The county, previous to the date of the explosion, had installed new pipes from the pit which fed the courthouse, jail, and other county buildings. The evidence shows that these pipes were tested with an air compressor a few weeks before the explosion. Several small leaks were located and immediately repaired. A three-inch and six-inch pipe line leading from those lines already laid, entered the concrete pit through the west wall thereof. The westerly end of the concrete pit was designated, for reference purposes, as the "County side." The easterly one-half was for the same reason designated as the "Gas Company's side." A network of pipe, couplings and large valves comprise the bulk of installations in the pit on the west side which had theretofore been installed or were being installed by respondent for the county the day before the explosion occurred. The purpose of that set-up was to permit installation of a master meter and a sub-meter and then to connect with the intake pipe from the Gas Company main which entered the pit from the easterly end or opposite side known as the "Gas Company's side." On the day before the explosion there was installed by the gas company a temporary two-inch line connecting the installations of the county to the installations of the gas company. A meter was tempo-

rarily installed by the gas company approximately half way across the twelve-foot pit.

The witness Tully testified that he was plumbing foreman for the county; that he and appellant, his helper, were installing certain pipes on the county side of the pit on June 26; that the gas company employees were installing their meter at the same time; that about 5:30 p. m. on that day the gas was turned on; that the county made no tests in connection with the pipes they had installed after the gas was turned on; that he returned to the pit the next morning with respondent; that they opened the manhole; that the hook-up was as above indicated; that they were there to run more pipe leading from a certain "Tee" installed by them along the west and south wall; that the "Tee" was not capped off the night previous but it was closed up by a valve which they had installed; that Gerhart took tools and pipe into the pit; that he then detected a slight odor of gas; that shortly thereafter an explosion took place and Gerhart was injured; that he (Tully) went into the pit and observed the pipes and connections; that he' did not make a check of the lines to determine whether there was a leak; that while he was there a "gas man" came and tested the lines and that he noted that he made a test of all of the installations with soap-suds and that there were no leaks observed on either side; that he (Tully) did not make any tests of the county's lines at that time but that afternoon he tested them and found no leaks.

Witnesses for appellant, employees of the gas company who worked in the pit the day previous to the explosion, testified that after they had completed their installations, all pipes and fittings of theirs were tested by soap tests and no leaks were found. The witnesses did testify, however, on the following morning after the explosion they soap-tested every fitting on both the company and county's sides; that the only leak they found was a small one in the gate valve "D" installed by the county. The witnesses described the leak in detail. Thereafter, respondent called a special professor of chemistry at the Chaffee Junior College, who qualified as an expert and testified that by computation from the description of the gas leak, furnished by appellant's witnesses, the leak described could not alone have produced sufficient gas to form an explosive mixture. Appellant does not dispute this conclusion.

It was upon this testimony that the trial court applied the doctrine of res ipsa loquitur, found appellant to be guilty of negligence, and rendered judgment against it.

*White* v. *Spreckels,* 10 Cal.App. 287 [101 P. 920], and *Judson* v. *Giant Powder Co.,* 107 Cal. 549 [40 P. 1020, 48 Am.St.Rep. 146, 20 L.R.A. 718], were cases in which the doctrine of res ipsa loquitur was stated to be that when a thing which causes an injury is shown to be under the management of a defendant and the accident is such as in the ordinary course of events does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care. The rule above mentioned was adopted from *Scott* v. *London & St. Catherines Docks Co.,* 3 Hurl. & C. 596, and has been followed in a large number of California cases. In *White* v. *Spreckels, supra,* the rule has been so interpreted as to require the "thing" to be under the *exclusive* control and management of the defendant.

It follows, then, that for a plaintiff to make out a case entitling him to the benefit of the doctrine, he must prove (1) that there was an accident; (2) that the thing or instrumentality which caused the accident was at the time and prior thereto under the exclusive control and management of the defendant; (3) that the accident was such that in the ordinary course of events, the defendant using ordinary care, the accident would not have happened. The failure to prove all of the necessary elements set forth above would, in the instant case, entitle the defendant to judgment, and, of course, would not cast any burden upon the defendant to meet any inference of negligence created under the rule.

This exclusive control is not limited to the actual physical control but applies to the right of control of the instrumentality which causes the injury. (*Metz* v. *Southern Pacific Co.,* 51 Cal.App.2d 260 [124 P.2d 670].) The doctrine of res ipsa loquitur applies only where the cause of the injury is shown to be under the exclusive control and management of the defendant and can have no application when it was under the management and control of the plaintiff and his employer, nor to a case having a divided responsibility where an unexplained accident may have been attributable to one of several causes, for some of which the defendant is not responsible, and when it appears that the injury was caused

by one of two causes for one of which defendant is responsible but not for the other, plaintiff must fail, if the evidence does not show that the injury was the result of the former cause, or leaves it as probable that it was caused by one or the other. (*White* v. *Spreckels, supra*. See also, *Hilson* v. *Pacific Gas & Electric Co.*, 131 Cal.App. 427, 433 [21 P.2d 662].)

Respondent does not dispute this general rule, but argues that he is not "in accord with the manner in which defendant seeks to apply those principles." It is contended by him that regardless of the control of the other instrumentalities, such as the pipes, fittings, vault, meter and valves, the "thing" or instrumentality causing the explosion was the gas itself; that defendant exclusively controlled it from its point of origin, including its point of entry into the vault, across the vault, and to its point of exit from such vault; that once turned into the vault by appellant, neither respondent nor any other person had either the right or means of regulating its flow and existence within the vault; that if there were a myriad of leaks in the pipes of the gas company, no one could control them with the exception of that company; that since defendant had that degree of exclusive control of the gas in its entry and flow in the pit, the rule was applicable, citing *Hernandez* v. *Southern California Gas Co.*, 213 Cal. 384, 388 [2 P.2d 360]; *Hilson* v. *Pacific Gas & Electric Co., supra; Smith* v. *Southern Counties Gas Co.*, 89 Cal.App. 81 [264 P. 532]; *Chutuk* v. *Southern California Gas Co.*, 218 Cal. 395 [23 P.2d 285].

We are unable to adopt the narrow interpretation placed upon this rule by respondent under the facts here disclosed. A defective or leaking pipe or connection from which the gas must of necessity have escaped in the pit or vault should be considered to be at least one of the "instrumentalities" or "things" referred to in the rule. In *Hohnemann* v. *Pacific Gas & Electric Co.*, 35 Cal.App.2d 597 [96 P.2d 350], it was not questioned that the gas which exploded was originally the defendant company's gas. Prior to escaping and exploding, however, the gas had passed through the company's pipes, the company's meter, and the consumer's system of house piping. The trial court declined to apply the doctrine of res ipsa loquitur and the appellate court affirmed its action. The actual damage was caused by the escaping gas, but the point of escape not being under the defendant

company's exclusive control, the doctrine was held not to be applicable as against the company. In *Hill* v. *Pacific Gas & Electric Co.*, 22 Cal.App. 788, 790 [136 P. 492], it was held that after the electricity passed through the meter it was no longer under the control of the electric company. (See also, *Gerdes* v. *Pacific Gas & Electric Co.*, 219 Cal. 459 [27 P.2d 365, 90 A.L.R. 1071]; *Wright* v. *Southern Counties Gas Co.*, 102 Cal.App. 656 [283 P. 823]; *Biddlecomb* v. *Haydon*, 4 Cal.App.2d 361 [40 P.2d 873]; *White* v. *Spreckels, supra.*) In *Van Horn* v. *Pacific Refining, etc. Co.*, 27 Cal.App. 105 [148 P. 951], it was held that the steam pipe was the instrumentality found to be under the control of the defendant as distinguished from the escaping steam. In each of these above-cited cases the commodity which caused the explosion was supplied by the defendant, but the doctrine was held inapplicable because the appliances which contained or permitted the escape of the commodity was not under the control of the defendant at the time. In *Lewis* v. *Southern California Gas Co.*, 92 Cal.App. 670, 676 [268 P. 930], it was said, quoting from 28 C.J. p. 594, sec. 59d:

"The general rule requiring the use of ordinary care and diligence on the part of a gas company applies to its delivery of gas into the residence or other building of the consumer. The rule has been laid down, however, that in the absence of any fact upon which to base an inference of duty, the failure of the gas company, on introducing gas into a dwelling, upon application, to inspect pipes or fixtures which were placed there by the owner, and over which the company had no control, is not negligence. The company is warranted in assuming that the interior system of pipes is sufficiently secure to permit the gas to be introduced with safety. To render the company liable in such cases, there must be facts alleged to show notice of defects, or facts from which an inference of duty to inspect arises, either from contract, custom or franchise." (See also *Ray* v. *Pacific Gas & Electric Co.*, 3 Cal.App.2d 329 [39 P.2d 812]; *Ingledue* v. *Davidson*, 102 Cal.App. 703 [283 P. 840].)

From the evidence in this case it is apparent (1) that the source of the escaping gas was never discovered; (2) that the defendant installed and controlled only a portion of the piping and appliances in the vault and did not own or control the vault; (3) a substantial portion of the piping and

appliances in the vault were installed on behalf of and controlled by the county of San Bernardino; (4) the installation of the appellant was tested and found gastight both before and after the accident; and (5) the gas could as readily have escaped from the county's piping as it could have from the appellant's piping. It therefore appears that appellant installed and had control of only a portion of the piping within the vault. It has often been held that where all of the instrumentalities which might have caused an accident were not under the control of the defendant, the doctrine cannot apply. This court, in an often cited decision (*Hubbert* v. *Aztec Brewing Co.*, 26 Cal.App.2d 664 [80 P.2d 185, 1016]), fully discussed the res ipsa loquitur rule and there refused to apply it. We fail to observe any factual distinction between the two cases that would impel a different conclusion. We there quoted from the rule laid down in *Hilson* v. *Pacific Gas & Electric Co.*, supra, p. 434, "that the doctrine of *res ipsa loquitur* can only apply when the defendant has exclusive control of the instrumentality causing the injury, *and can in no event apply* when the accident may as well have been due to one or more causes over which defendant had no control." This, the court says, "is a correct statement of the rule." This rule was recognized and affirmed in two comparatively recent cases. The first of these is *Hohnemann* v. *Pacific Gas & Electric Co.*, supra. There a fatal explosion was caused by an employee of the utility company negligently turning on the wrong meter *or* by the negligence of decedent or someone else in leaving an open pipe in the house *or* by both concurrently. In refusing to apply the doctrine the court said:

"In this case the meter was exclusively owned and controlled by defendant corporation; the pipe and cap thereon exclusively by the decedent. In other words, neither the decedent nor the defendant had control of both the swivel connection of the meter and the pipe and cap thereon in the apartment. The doctrine of *res ispa loquitur* is not applicable unless the party against whom the rule is invoked has not only accessibility to the facts of the case but a better opportunity, based upon knowledge of surrounding facts, of explaining the occurrence. . . . Under the facts of this case the rule was not applicable to either side."

The other recognition of the rule is found in *City of Oak-*

*land* v. *Pacific Gas & Electric Co.*, 47 Cal.App.2d 444 [118 P.2d 328]. There the utility company was serving steam to a library building from a main supply line located in the street through a meter located in the basement of the building in question. At a point beyond the meter (i.e., on the customer's side), a leak occurred, causing damage. Although the appellate court affirmed a judgment against the utility company on a charge that the defendant was negligent in not turning off the escaping steam after it had knowledge of the leak, the claim of the applicability of the doctrine of res ipsa loquitur was disposed of as follows:

"Appellant company did not have exclusive control and management of the pipe system; and since the damage to the books was primarily due to a break therein, the doctrine of *res ipsa loquitur* is inapplicable to the facts of this case." (See 'also *White* v. *Spreckels, supra; Searles* v. *Manhattan Ry. Co.*, 101 N.Y. 661 [5 N.E. 66]; *Harrison* v. *Sutter Street Ry. Co.*, 134 Cal. 549 [66 P. 787, 55 L.R.A. 608]; *Olson* v. *Whitthorne & Swan*, 203 Cal. 206, 208 [263 P. 518, 58 A.L.R. 129]; *Rosenbaum* v. *First Doe Luce*, 96 Cal.App. 149 [273 P. 862]; *National Sheet-metal Roofing Co.* v. *N. Y. Tel. Co.*, 5 N.J. Misc. R. 503, [137 A. 409]; *Gerber* v. *Faber*, 54 Cal. App.2d 674 [129 P.2d 485].)

In *Smith* v. *Southern Counties Gas Co., supra,* relied upon by respondent, the manhole and all the gas pipes were installed and maintained exclusively by the defendant company, but here only a portion of the piping was installed and maintained by the utility company. The vault and a substantial portion of the piping were constructed, installed and maintained by the county of San Bernardino. In *Hilson* v. *Pacific Gas & Electric Co., supra,* cited by respondent, the doctrine was held applicable only as to one feature of the case, i.e., the question of improper gas pressure. The defendant admitted its control over the pressure and flow of the gas and the trial court instructed the jury that it could apply the doctrine and draw the inference of negligence *if it found* that the accident resulted from the flow and pressure of the gas. Under those circumstances the appellate court held the instruction to be proper. Such are not the facts here.

In *Chutuk* v. *Southern California Gas Co., supra,* the instrumentalities, the pipe line and riser causing the leakage

of gas and resulting explosion, were not located on the plaintiff's property and the plaintiff had never assumed to have any management or control of them. Such is not the evidence here. Respondent's argument that because only one small leak was found in the piping installed by him and his superior, the gas necessarily escaped from the appellant company's installation, and that because no major leak was found in the county piping, the gas *must* have come from the appellant's pipes, is directly contrary to the findings of fact, i.e., ''That it is true that the exact source of gas within the pit, or point and time of escape, if any, of such gas is unknown.'' In the face of such finding, it cannot be successfully argued that the gas escaped from the appellant's pipes. The doctrine of res ipsa loquitur is intended to apply and is applied only where, from the circumstances, the plaintiff is not in a position to explain what happened and the defendant, because of its exclusive control and superior knowledge, is presumed to be able to explain the cause of the accident. (*Alexander* v. *Wong Yick,* 25 Cal.App.2d 265 [77 P.2d 476].) It therefore must follow that the respondent herein having failed to prove or introduce any evidence that the gas escaped from pipes exclusively controlled by the defendant, the doctrine of res ipsa loquitur should not have been applied.

For the reasons expressed the judgment is reversed.

Barnard, P. J., and Marks, J., concurred.