**GAILBREATH v. HOMESTEAD FIRE INS. CO. et al.**

No. 12452.

United States Court of Appeals
Ninth Circuit.

Nov. 17, 1950.

---

4. See Panhandle Pipe Line Co. v. Public Service Comm., 1947, 332 U.S. 507, 68 S.Ct. 190, 92 L.Ed. 128.

Earl D. Desmond, E. Vayne Miller, Sacramento, Cal., K. D. Robinson, Auburn, Cal., for appellant.

Louis V. Crowley, H. Rowan Gaither, Jr., Arthur E. Cooley, Augustus Castro and Cooley, Crowley & Gaither, all of San Francisco, Cal., for appellees.

Before MATHEWS, STEPHENS and ORR, Circuit Judges.

STEPHENS, Circuit Judge.

Appellees herein, The Homestead Fire Insurance Company, a Maryland corporation, and Sun Insurance Office, Limited, a corporation organized and existing under the laws of England, joined in an action in the United States District Court for the Northern District of California against the Signal Oil Company, a California corporation, and four fictitious party-defendants, citizens of California.[1] Each appellee stated separately a claim arising out of the same occurrence and for an amount in excess of $3,000. Prior to trial the causes as against the Signal Oil Company were dismissed without prejudice. Sam Gailbreath answered the complaint and after trial to the court appeals from an adverse decision.

Sometime prior to October 31, 1946, the Herold Lumber Company, owner of a frame lumber storage and office building situated in California and of a stock of lumber on the premises, insured its properties through the above-mentioned insurance companies against loss and damage by fire. A fire occurred totally destroying the building and part of the lumber. The insurance companies paid in part for the loss and, under their rights of subrogation, sought in district court to recover from appellant the amounts so paid.

It was alleged that two of the fictitious defendants, as employees of the other defendants, in the course of their employment "so carelessly and negligently installed, controlled and tested a certain oil burning stove then under their sole control in said building as to cause, and they did cause, a fire to start in said building" which destroyed the building and part of the lumber. The district court found that at the time in question Cerino Lemos and Harry Gregory were employees of the appellant and that in the course of such employment they were negligent at the time and place and in the manner alleged and thereby caused the fire and damage as alleged.

The evidence as to the cause of the fire was oral and conflicting. At the close of plaintiff-appellees' case, counsel for defendant-appellant moved for a nonsuit.[2]

Appellant is, and was at the time in question, engaged in the business of retailing and installing oil-consuming heating plants and employs, and has employed during eighteen years in such business, men to install oil stoves.

At the time of the fire construction of the building had been substantially completed by Lars Wold, an independent contractor, but his carpenters were still working on the premises. Prior to the installation of the oil stove Wold had constructed a patent flue of terra cotta lining and aluminum casing to which the stove was connected. Wold had a permit authorizing construction of the flue and completed construction had been approved by an inspector prior to the day of the fire.

The proof adduced by plaintiff-appellees in chief tended to prove the following

---

1. As will appear from our later discussion, appellant Sam Gailbreath and his employees Lemos and Gregory are three of the party-defendants fictitiously named. It is not disputed but that they are citizens of California, and the district court found that diversity of citizenship existed. We note that the judgment appealed from runs against only Sam Gailbreath.

2. Properly the motion was for a dismissal "on the ground that upon the facts and the law the plaintiff has shown no right to relief." Rule 41(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. It does not appear from the record before us that the district court ruled upon the motion. However, appellant does not specify as error the refusal of the district court to grant the motion.

facts: The lumber company purchased the oil stove from appellant who was to furnish the necessary fittings and install it. Immediately before the fire started, Gregory "mopped" under the stove, opened it and tossed a lighted match into it. A puff came from the stove and a square of fire appeared under it. Gregory attempted to beat it out but failing, picked up the stove and owing to the heat had to drop it. The fire quickly went up the full width of the wall nearest the stove, across the ceiling and down the other sides of the room.

Appellant, called under Rule 43(b) of the Federal Rules of Civil Procedure, testified that Lemos was sent by him to the lumber company premises on the day of the fire with tubing and an oil drum or tank and that Lemos was to see that a platform was erected on which to place the tank, was to pump oil into the tank after it was in position, and was to put a valve on the tank. Carpenters employed by the building contractor built a stand for the tank on the west side of the building near its center.

It was also disclosed that on the day preceding and on the day of the fire painters employed by the lumber company had painted the floor, walls and ceiling of the office with an inflammable floor hardener. Invoices and statements received in evidence showed that appellant did not charge Herold Lumber Company for installation of the stove and that appellant did not bill the lumber company for the stovepipe to connect the stove with the flue.[3]

Appellant testified that he was not instructed to and did not agree to and did not install the stove and did not secure a permit to do so; that the lumber company agreed to install it because "they wanted to dry the office out"; that he did not supply any stovepipe; that he arrived at the lumber company premises shortly after the fire started; that the oil tank had already been moved away from the burning building, and that it had not exploded nor been burned and about a gallon of oil had been consumed. Lemos testified that he took an oil tank, some oil, and some copper tubing to the premises; that he placed the tank on a platform erected for him by carpenters and laid out the tubing under the building, attached a valve on the tank, and filled the tank with oil; that he then went into the office and observed that some painting was going on, that the tubing had already been connected with the stove and that someone was hooking up the stovepipe; that after the stovepipe was in place he went outside, turned on the valve, returned to the office and lit the stove which burned properly; and that Gregory arrived shortly thereafter and directed Lemos to make some other deliveries which he then did, leaving Gregory at Herold's. Gregory testified that he did nothing to the stove after arrival; that he did not light the stove; that he was near the door of the office when the fire started about an hour after he arrived; and that he tried to extinguish the fire and to move the stove.[4] He smelled fresh paint in the office upon arrival and both Lemos and Gregory said they had done other installation work for appellant.

Appellant contends that the evidence is insufficient to support the judgment; that the judgment is against the law; that the district court erred in finding that the fire

3. The company manager admitted that previously he had purchased from appellant a similar heating unit on behalf of another lumber company and that appellant had supplied and rendered a bill for the stovepipe used in the installation of such unit.

4. Gregory was asked by the court, "What were you doing there that day at all?" He answered, "Well, we sold the stove to these people and naturally I was trying to be—to stay there and take care of things in case there was anything ever would happen to it." He said he was not apprehensive that anything would happen. An insurance investigator testified on rebuttal that Gregory had admitted to him that he had connected the copper tubing (installed by someone else) to the stove; that installation of the stove had taken two and a half to three hours; that just before the fire started after turning on the valve and using a flashlight he saw that oil was flowing properly into the stove; that he then lit the stove by throwing in a lighted match; and that the fire ensued.

was proximately caused by the stove; that appellees did not establish that the stove and its accessories were under the exclusive control of the defendants; and that anyway the so-called *"res ipsa loquitur"* doctrine is inapplicable here because a stove is not an inherently dangerous article.

 Where the trial court sitting without a jury has made a finding upon an issue of negligence it is the duty of the appellate court as a matter of law to determine whether or not the finding is clearly erroneous even in the face of supporting evidence but only after due allowance of respect for the trial court's conclusion. And it is the appellate court's duty to reverse if, upon viewing the case as a whole, it is convinced that a mistake has been made. United States v. United States Gypsum Company, 1948, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746; Johnson v. United States, 2 Cir., 1948, 168 F.2d 886, 887; Smyth v. Barneson, 9 Cir., 1950, 181 F.2d 143, 144; Rule 52(a), Fed. Rules of Civil Procedure.

 In this case the destructive fire occurred and there is no direct evidence as to its cause. Upon all of the evidence the court was convinced that the cause lay with some fault in the installation of the stove, that is, there was negligence in its installation, and that appellant installed it. This finding of negligence was necessarily made through the doctrine of *res ipsa loquitur* and we think very properly. It is said in Ybarra v. Spangard, 1944, 25 Cal.2d 486, 489, 154 P.2d 687, 689, 162 A.L.R. 1258, that uncertainties as to the application of *res ipsa loquitur* have arisen " * * * in part due to the tendency, in some decisions, to lay undue emphasis on the limitations of the doctrine, and to give too little attention to its basic underlying purpose. The result has been that a simple, understandable rule of circumstantial evidence, with a sound background of common sense and human experience, has occasionally been transformed into a rigid legal formula, which arbitrarily precludes its application in many cases where it is most important that it should be applied. If the doctrine is to continue to serve a useful purpose,

we should not forget that 'the particular force and justice of the rule, regarded as a presumption throwing upon the party charged the duty of producing evidence, consists in the circumstance that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to him but inaccessible to the injured person.' * * * " In Sweeney v. Erving, 1913, 228 U.S. 233, 240, 33 S.Ct. 416, 418, 57 L. Ed. 815, it is said: "In our opinion, *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. [That they make a case to be decided by the judge is, of course, equally true.] *Res ipsa loquitur*, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury [or the judge] is whether the preponderance is with the plaintiff [or the party asserting negligence]." At pages 238 and 239 of 228 U.S. at page 418, of 33 S.Ct., of the same case it is said: " * * * *res ipsa loquitur*,—the thing speaks for itself; that is to say, if there is nothing to explain or rebut the inference that arises from the way in which the thing happens, it may fairly be found to have been occasioned by negligence." Prosser on Torts (1941) at page 297, says: "Where no such balance of probabilities in favor of negligence can be found, res ipsa loquitur does not apply." See Gerhart v. Southern California Gas Co., 1942, 56 Cal.App.2d 425, 132 P.2d 874.

In La Porte v. Houston, 33 Cal.2d 167, 169, 199 P.2d 665, 666 (1948) we read: " * * * the applicability of the doctrine of res ipsa loquitur depends on whether it can be said, in the light of common experience, that the accident was more likely than not the result of their negligence." Compare Biddlecomb v. Haydon, 1935, 4 Cal.

App.2d 361, 40 P.2d 873; Roselip v. Raisch, 1946, 73 Cal.App.2d 125, 166 P.2d 340.

In accord with the authorities cited and the reasoning in this opinion we hold that the judgment must be and is

Affirmed.