[Civ. No. 9226. First Appellate District, Division Two.—July 31, 1934.]

EVELYN BRUNIG et al., Minors, etc., Respondents, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Appellant.

Thos. J. Straub, W. H. Spaulding and Clinton F. Stanley for Appellant.

Eugene H. O'Donnell, Leland J. Lazarus and Edwin J. Regan for Respondents.

STURTEVANT, J. — In an action brought to recover damages for the loss of their father the jury brought in a verdict in favor of the plaintiffs. From the judgment entered on the verdict the defendant has appealed.

Before taking up the points made by it we will set forth some facts shown by the record. In their complaint the plaintiffs alleged that at the time of the accident the defendant was engaged in the business of supplying illuminating gas and electricity and had installed and maintained a system of gas mains and pipes under Third Street in the neighborhood where the accident occurred. That allegation was not denied by the defendant. The plaintiffs alleged the negligence of the defendant in general terms. (*Stein* v. *United Railroads*, 159 Cal. 368 [113 Pac. 663].) That allegation was denied by the defendant. After the jury was impaneled the plaintiffs made an opening statement. In it their counsel stated with much detail the facts that they expected to prove. Immediately thereafter the plaintiffs took up the burden of proof. In so doing they called many witnesses and introduced over five hundred folios of testimony. By the direct evidence of their witnesses they introduced evidence proving or tending to prove that the accident occurred at 4032 Third Street in San Francisco. That number designates a house that is located in what is known as Butchertown, a large portion of which was built on filled-in marsh-lands. The record does not disclose when the filling in was done but it does show the fact that the

defendant's pipes were laid some time prior to 1908. How much before that date the record does not show. On the night of December 22–23, 1931, it had been raining. The extent of the rain or storm is not shown by the record. However, the next morning immediately in front of 4032 Third Street there was a depression in the street and water had accumulated. Charles Brunig, Jr., was sojourning at 4032 Third Street. He was occupying the front room on the second floor. The lower floor constituted a separate flat and was occupied by a different tenancy. At 3 o'clock in the morning of December 23d, a young woman who was sleeping in a back room on the first floor awoke and smelled gas. She went to sleep again and when she awoke about 7 she testified that she was nauseated. At about 6 o'clock two men passed by the building going to their places of employment. When they passed the building gas odor was so strong that they stopped and one of them rapped on the window and notified a woman who was occupying that room. At about 8 o'clock in the morning Charles Brunig, Jr., arose. He rolled a cigarette and struck a match to light it. As he did so an explosion occurred that was of such violence as to wreck the front part of the building. The flames of the explosion burned Charles Brunig, Jr., so severely that he died at 10 o'clock that evening. Immediately after the explosion occurred a fire alarm was put in and the firemen appeared in a few minutes. The fire in the building was immediately under control except at the top of a retaining wall that was on the eastern end of the lot and bordering on the west side of Third Street. At that place the gas continued to flow across the top of the wall and so continued to flow until representatives of the defendant arrived and shut off the gas. Thereupon the flames went out. To shut off the gas the service pipe immediately adjacent to the premises was uncovered. It led from the main which was located along the eastern line of Third Street. The service pipe was laid about two feet below the surface of the street and passed through and was embedded in the concrete retaining wall. At a point about eighteen inches from the wall out into the street there was a sleeve or coupling. At that point the service pipe was broken and the street end had dropped about an inch and a half. The plaintiffs also introduced evidence that in several places in

the immediate neighborhood the ground had sunk and the sidewalks had buckled when the ground sunk below them. When the defendant's representatives uncovered the service pipe at number 4032, it was found that a space of several inches existed between the level of the soil and the bottom of the concrete sidewalk. Continuing, the plaintiffs introduced evidence of complaints of gas leaks in the immediate neighborhood of number 4032. Those complaints covered a period of years from one to seventeen.

At the close of the plaintiffs' case in chief the defendant made a motion for a nonsuit. The motion was denied and the defendant thereupon introduced its defense. One witness was called in rebuttal. He merely identified the piece of pipe that had been taken out of the concrete wall and it was admitted in evidence.

The first point made by the defendant is that there was no evidence upon which to base a verdict of negligence. We think that may not be said as a matter of law. Taking the direct evidence and the inferences which the jury was entitled to draw therefrom, we think the point may not be sustained. (*Union etc. Co.* v. *San Francisco Gas etc. Co.,* 168 Cal. 58, 60, 61 [141 Pac. 807]; *Willard* v. *Valley Gas & Fuel Co.,* 171 Cal. 9, 13 [151 Pac. 286].)

The plaintiffs requested and the trial court gave two instructions which were as follows:

## "IV.

"In civil cases, and this is a civil case, the affirmative of the issue must be proven. The affirmative here is upon the plaintiffs as to all affirmative allegations of the complaint. Upon the plaintiffs, therefore, rests the burden of proof by a preponderance of evidence. However, there is in law a doctrine known as *res ipsa loquitur,* meaning that the thing or matter speaks for itself. In other words, when a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

## "XLII.

"You are instructed that in this case plaintiffs are not required to show particularly what the specific act of neg-

ligence was, if any, which produced the accident which resulted in the death of Charles Brunig, Jr., deceased, but are only required to show that the accident was one that would ordinarily not have occurred had due care been employed. The burden of proceeding then shifts to the defendant, Pacific Gas and Electric Company, to show its freedom from negligence.''

The defendant asserts that the trial court committed prejudicial error. It bases its assertion on the fact that the exact facts of the accident were put in evidence by the plaintiffs. True it is that the plaintiffs introduced direct evidence of what happened but their case rested on indirect evidence as to the negligence, if any, of the defendant. Under a similar condition of the record the same contention was made in *Lippert* v. *Pacific Sugar Corp.*, 33 Cal. App. 198 [164 Pac. 810]. In deciding the point, at page 208, the court said: ''We are satisfied that this is a case where the doctrine of *res ipsa loquitur* is applicable, and plaintiffs are not precluded from relying upon it because they charged specific omissions of duties or acts of negligence. This latter proposition is well supported in *Cassady* v. *Old Colony Street Ry. Co.*, 184 Mass. 156 [63 L. R. A. 285, 68 N. E. 10], where it was said: 'The defendant also contends that even if originally the doctrine would have been applicable, the plaintiff had lost or waived her rights under that doctrine (*res ipsa loquitur*), because, instead of resting her case solely upon it, she undertook to go further, and show particularly the cause of the accident. This position is not tenable. It is true that, where the evidence shows the precise cause of the accident, as in *Winship* v. *New York, N. H. & H. R. Co.*, 170 Mass. 464 [49 N. E. 647], and similar cases, there is, of course, no room for the application of the doctrine of presumption. The real cause being shown, there is no occasion to inquire as to what the presumption would have been as to it if it had not been shown. But if, at the close of the evidence, the cause does not clearly appear, or if there is a dispute as to what it is, then it is open to the plaintiff to argue upon the whole evidence, and the jury are justified in relying upon presumptions, unless they are satisfied that the cause has been shown to be inconsistent with it. An unsuccessful attempt to prove by direct evidence the precise cause does not estop the plaintiff from

relying upon the presumptions applicable to it.' Plaintiffs may therefore rely on the presumption of defendant's negligence although they endeavored, as did defendant, 'to show particularly the cause of the accident'.'' The court did not err in giving either or both of the instructions complained of.

■ The last point made is that the court committed prejudicial error in admitting, over defendant's objections, testimony of other instances of gas troubles in the neighborhood all arising under different conditions, or from unknown causes, and all occurring in a remote time. To that point there are many answers. The other instances did not arise under different conditions but under the same conditions— sinking ground in filled-in territory. They did not all occur in a remote time. They extended over a long period of time. Some were recent, others not so recent, others still less recent. The admissibility of the incident was addressed to the discretion of the trial court and the weight of the evidence was for the jury. It was the contention of the plaintiffs that Butchertown is built on filled-in marsh-lands; that the defendant laid its pipes in that ground as early as 1908 or prior thereto; that the ground under the pipes and in which they were laid continually settled and thus created a strain on the pipes which caused and tended to cause breakage and leakage throughout a long period of time but, nevertheless, the defendant negligently failed to inspect and to make such alterations as would prevent the breaks and leaks. To present that contention they called several witnesses. Mr. Lagrave testified that in 1920 the gas pipe in front of his house, four doors removed from 4032 Third Street, blew up. Mrs. Bordenave testified that from 1914 to 1919 she occupied the flat at number 4032, in which the accident happened. During that time three complaints were made to the defendant regarding escaping gas on the sidewalk in front of the flat. Mrs. Fern lived in the same premises in 1921. During that time the defendant made excavations and located two leaks. Mrs. Robertson testified that about five years before the trial, at the corner of Hudson Avenue, one block from number 4032, gas escaped and came through the blocks in the sidewalk. Mrs. Mercadier testified that in 1921 she saw the defendant's employees digging up the street in front of number 4034 Third Street, the house she lived in. The plaintiffs also

introduced evidence that at several places the earth sunk and holes or depressions existed in the streets or sidewalks. The court did not err in admitting the evidence complained of. (*Long* v. *John Breuner Co.*, 36 Cal. App. 630, 640 [172 Pac. 1132]; *Lewis* v. *Boston Gaslight Co.*, 165 Mass. 411 [43 N. E. 178]; *Consumers' Gas Trust Co.* v. *Perrego*, 144 Ind. 350 [43 N. E. 306, 309, 32 L. R. A. 146]; *King* v. *Equitable Gas Co.*, 307 Pa. 287 [161 Atl. 65, 67]; *E. L. Chester Co.* v. *Wisconsin Power & Light Co.*, 211 Wis. 158 [247 N. W. 861]; 28 C. J. 601.) In the case last cited, at page 867, the Supreme Court of Wisconsin said:

"The court received evidence that prior to the breaking of the valve in question, another similar valve located in another part of the system also broke. It is claimed that this was error. Respondent justifies the reception of this evidence because, upon his theory, the entire installation was improper and unsafe, and was bound to give way at the weak or weakest point in the circuit, and that the situation is identical with that of the drive-belt, which it was claimed was defective and had broken upon previous occasions, evidence as to which was held admissible in *Brossard* v. *Morgan Co.*, 150 Wis. 1 [136 N. W. 181], and numerous other cases on the point are cited by respondent. We conclude that there was no error in the reception of this evidence under the circumstances and under the issue formed."

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 30, 1934, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 27, 1934.

Langdon, J., and Spence, J., *pro tem.*, being disqualified, did not participate.