[L. A. No. 18424. In Bank. Dec. 16, 1942.]

FRANK CHUTUK, Respondent, v. SOUTHERN COUNTIES GAS COMPANY OF CALIFORNIA (a Corporation), Appellant.

LeRoy M. Edwards and O. C. Sattinger for Appellant.

Earl E. Howard for Respondent.

SPENCE, J. pro tem.—This is an appeal by defendant from a judgment entered upon a verdict in favor of plaintiff in an action brought to recover damages for personal injuries.

Plaintiff was a member of a firm of contractors which constructed a sewer in the Pacific Palisades area in Los Angeles County in the summer and fall of 1939. He received his injuries on November 2, 1939, as the result of an explosion which occurred while he was inspecting a deep manhole in the sewer line on Friends Street near the intersection of Lombard Avenue at a time when the job had been practically completed. The gas main of the defendant company practically paralleled the sewer line along Friends Street and was in close proximity thereto. It was stipulated upon the trial that the defendant company was the only company distributing gas in that vicinity and it is conceded that the gas which caused the explosion had escaped from the distributing system maintained by defendant under the surface of Friends Street. The evidence showed that the explosion occurred while plaintiff was in the manhole chipping off a rough spot in the concrete with a chisel and hammer and that the gas in the manhole was ignited by a spark from that operation.

Defendant first contends that the evidence was insufficient to show negligence on the part of the defendant but we find no merit in this contention. Defendant argues that plaintiff cannot avail himself of the doctrine of res ipsa loquitur and, as we understand this argument of defendant, it involves three separate phases: first, that the doctrine is not available to plaintiff under the facts of this case "inasmuch as the sewer line and manholes were owned by and in the possession of the City of Los Angeles" and were not under the exclusive control of defendant; second, that even if the doctrine might be applicable in the absence of a further showing, defendant proved that the source of the gas in the manhole was a leak in

its distributing system under Friends Street, which leak was not the result of negligence on the part of defendant; and, third, that plaintiff precluded himself from invoking the doctrine of res ipsa loquitur for the reason that plaintiff undertook to prove a specific act of negligence on the part of the defendant.

The first phase of defendant's argument seems to resolve itself into a claim that as the place of the accident was not under the exclusive control of defendant and as the gas which had escaped from defendant's distributing system to the place of the accident was no longer under defendant's exclusive control, the essential requirement of exclusive control by defendant of the "instrumentality" causing the injury was lacking. We do not believe, however, that it was essential for the application of the doctrine that defendant should have had either exclusive control of the place where the accident occurred or exclusive control of the gas at the time and place the accident occurred. (See *Juchert* v. *California Water Service Co.*, 16 Cal.2d 500 [106 P.2d 886]; *Chutuk* v. *Southern California Gas Co.*, 218 Cal. 395 [23 P.2d 285]; *Brunig* v. *Pacific Gas & Electric Co.*, 140 Cal.App. 254 [35 P.2d 226]; *Buffums'* v. *City of Long Beach*, 111 Cal.App. 327 [295 P. 540]; *Breidenbach* v. *McCormick Co.*, 20 Cal.App. 184 [128 P. 423]; 19 Cal.Jur. 709.) The cited authorities clearly indicate that it was sufficient that defendant had exclusive control of its distributing system under Friends Street; that gas would not ordinarily have escaped therefrom in dangerous quantities in the absence of negligence on the part of the defendant; and that gas did escape therefrom in dangerous quantities thereby causing the injuries at a place in said street in close proximity to the distributing system.

The authorities upon which defendant relies may be readily distinguished. In *Hernandez* v. *Southern California Gas Co.*, 213 Cal. 384 [2 P.2d 360], which involved an explosion in a sewer, the court stated, on page 388, that the question presented was "what caused the injury, defendant's gas or some other explosive"? It is clearly indicated in the opinion that if it had been shown that the gas which caused the injuries was gas from the distributing system over which defendant had exclusive control, the doctrine of res ipsa loquitur would have been applicable. In *Hohnemann* v. *Pacific Gas & Elec-*

*tric Co.*, 35 Cal.App.2d 597 [96 P.2d 350]; *Ingledue* v. *Davidson*, 102 Cal.App. 703 [283 P. 840], and *Wright* v. *Southern Counties Gas Co.*, 102 Cal.App. 656 [283 P. 823], the places from which the gas escaped were on the premises of consumers, which places were not under the exclusive control of the parties sought to be charged. The doctrine of res ipsa loquitur was therefore held inapplicable. A similar situation was presented in *White* v. *Spreckels*, 10 Cal.App. 287 [101 P. 920]. Finally, the case of *Gerdes* v. *Pacific Gas & Electric Co.*, 219 Cal. 459 [27 P.2d 365, 90 A.L.R. 1071], which defendant claims to be directly in point, must be read in the light of the peculiar circumstances which were shown by the evidence. In that case, the cause of the break in the gas main was conceded by all concerned. Two water mains had broken under the street, washing out the soil and causing the pavement to cave in and to break the gas main. As appears on pages 462 and 463, the plaintiffs there claimed that the gas company had been negligent in failing to turn off the gas within a reasonable time after receiving notice. On page 471, this court expressed the view that instructions on the doctrine of res ipsa loquitur should not have been given but held that the giving of said instructions was not sufficiently prejudicial to constitute reversible error. It is entirely clear from a reading of the opinion that the court was of the view that the company there had demonstrated its freedom from negligence in every respect except the failure to turn off the gas after notice. It was held that the jury's verdict ''must be held to be a finding against the gas company as to negligence in this particular respect.'' In the present case, the cause of the particular leak in the distributing system to which defendant refers is not conceded; nor is it conceded that said leak was the source of the gas which caused the explosion. The Gerdes case does not therefore support the claim of defendant that the doctrine of res ipsa loquitur is inapplicable in the present case.

█ The second phase of defendant's argument requires a further statement of facts. By way of defense, defendant introduced evidence tending to show its freedom from negligence generally and further tending to show in particular its freedom from negligence with respect to the admitted leak in its distributing system under Friends Street at a point near another manhole about 1,000 feet downgrade. Said leak was at the connection of the defendant's main with one of its

service pipes, which service pipe was no longer in use. Defendant states that "As a result of this break, gas seeped into the manholes of the sewer system—such manholes and the joints of the sewer system being neither watertight nor airtight—and exploded when ignited by the respondent." This is described by defendant as "the only way the accident could have occurred." While we do not believe that the evidence shows that said leak was the only possible source of the gas from defendant's distributing system which found its way to the place of the accident, we may assume for the purposes of this discussion that the evidence shows that this leak was the most probable source of said gas.

Defendant introduced evidence showing that after it received notice that a sewer line was to be constructed in said area during 1939, it determined to recondition its distributing system before the installation of new paving. The major portion of the distributing system had been installed in 1923. The reconditioning work done in 1939 was described in the testimony of the superintendent as follows: "We reconditioned the main and uncovered the main and cleaned it, and primed it with a coal tar primer, and wrapped it with a hot tar paper, and renewed all services." Some pieces of new pipe were installed in the main but most of the pitted pipe was electrically welded. No new pipe was installed in the main on Friends Street. It was claimed by defendant that after the reconditioning, the main was in "as good condition as a new main" and that tests showed that there were no leaks. Practically all service pipes on Friends Street were replaced with copper pipe but the service pipe, at the connection of which the admitted leak occurred, was not replaced. It was the claim of defendant that this connection was inspected and was found in "perfect condition." The inspection and reconditioning of defendant's distributing system was completed in July, 1939.

Defendant also introduced evidence tending to show that the admitted leak in its distributing system was caused after the reconditioning either by the negligence of plaintiff's employees or by the negligence of other persons not connected with defendant. The service pipe where the admitted leak occurred was uncovered after the accident and was found to be bent in a manner which indicated that it might have been struck some distance from the connection by a blow which could have been made by apparatus such as a trenching

machine, and that the leak at the connection might have been caused by the strain at the connection resulting from the blow. Plaintiff claimed that his employees had not struck the service pipe. Further and by way of rebuttal, plaintiff introduced evidence for the purpose of showing that defendant was not free from negligence in any event for the reason that defendant had assumed the burden of marking the location of all pipes in its distributing system upon the street and had failed to mark the location of this particular service pipe. It will thus be seen that even if we assume that said leak was the probable source of the gas which caused the injury, there was nevertheless a conflict in the evidence as to the freedom of defendant from negligence with respect thereto. Under these circumstances the doctrine of res ipsa loquitur remained applicable and the question of whether there was negligence on the part of the defendant was a question of fact for the determination of the jury.

[3] The third phase of defendant's argument needs no extended discussion in the light of what has already been said. We may assume, without deciding, that if plaintiff had undertaken, in presenting his case in chief, to prove a specific act of negligence as a basis for recovery, he would have been precluded from relying upon the doctrine of res ipsa loquitur. (Compare *Brunig* v. *Pacific Gas & Electric Co.*, 140 Cal.App. 254 [35 P.2d 226].) It was not until after defendant had introduced evidence tending to show its freedom from negligence with respect to the admitted leak that plaintiff introduced evidence tending to show that defendant was not free from negligence with respect thereto. It was entirely proper for plaintiff to proceed in this manner and he did not thereby preclude himself from relying upon said doctrine. ■ In this connection defendant makes a claim at the end of his brief that plaintiff, in introducing the evidence tending to show negligence on the part of defendant in failing to mark the location of this particular service pipe, attempted to prove "another cause which was outside the pleadings and a fatal variance." This claim arises by reason of the fact that the trial court indicated, when the objection was made, that it did not believe such testimony was proper rebuttal testimony. The trial court nevertheless permitted the introduction thereof, over objection, after granting leave to plaintiff to reopen his case. We are of the opinion said testimony was proper

rebuttal testimony and that the introduction thereof did not result in a variance.

▮ Defendant further contends that plaintiff was chargeable with contributory negligence as a matter of law. This contention of defendant apparently divides itself into two separate phases: first, that the evidence shows that plaintiff's employee negligently operated plaintiff's trench digger thereby causing the admitted leak and that such negligence was imputable to plaintiff; and, second, that the evidence shows that plaintiff entered the manhole without taking proper precautions for his own safety. While there was evidence from which the jury might have concluded that plaintiff's trench digger struck the service pipe, the evidence did not compel this conclusion or the conclusion that there was any negligence on the part of plaintiff or his employees. In this connection, there was also evidence from which the jury might have concluded that if the service pipe was struck by anyone after the alleged inspection by defendant of the service pipe connection, the proximate cause of the striking and the resulting leak was the failure of defendant to mark the location of said service pipe upon the street. With respect to plaintiff's conduct at the time of the accident, there was evidence showing the precautions taken by plaintiff before entering the manhole from which the jury could have found that plaintiff exercised ordinary care. We therefore conclude that the question of whether plaintiff was chargeable with contributory negligence was essentially a question of fact for the determination of the jury and that defendant's contention that plaintiff was chargeable with contributory negligence as a matter of law cannot be sustained.

▮ The final contention of defendant is that the trial court erred in refusing to give four requested instructions. Said requested instructions read as follows:

(1) "Where it is shown from the evidence that an accident may have happened from one of two or more causes, for one of which the defendant is liable and for the other or others of which it is not liable, then there can be no recovery as against defendant because you are not allowed to speculate or guess as to which of the two or more causes produced the accident. If, from the evidence, it is equally probable that the accident may have resulted from the negligence, if any, upon the part of the defendant or from the acts of some third person over whom defendant had no control and whose acts it

had no reason to anticipate then you cannot speculate or guess as to who produced the accident, and your verdict must be for the defendant.''

(2) ''If you should find that the acts or omissions which caused natural gas to escape (if you find that natural gas of the defendant company did escape at the time and place here involved) were the acts of other persons than the said defendant or its agents or employees, and that such acts of such third persons, independently of any negligence on the part of this defendant, caused the injuries received by the plaintiff, then your verdict must be for the defendant.''

(3) ''Before you can return a verdict against defendant it must appear from a preponderance of the evidence that said defendant was guilty of negligence which proximately caused or contributed to the damage alleged in the complaint to have been sustained by the plaintiff. If you find by a preponderance of the evidence that the accident or explosion was solely and proximately caused by a person or persons over whose acts defendant had no control, you must return a verdict in favor of defendant.''

(4) ''Defendant was not, at the time and place here in question, an insurer of the person of the plaintiff, or of anyone else, and was only liable to the plaintiff in the event that some negligent act or omission on its part proximately caused his injuries. Accordingly, if you find by a preponderance of the evidence that some person, other than said defendant, interfered with defendant's gas mains and pipes so as to cause the same to leak or allow or permit of the escape of gas therefrom, and that defendant did not, or in the exercise of ordinary care could not have had notice of the fact that gas was escaping therefrom in reasonable time to permit it to repair or remedy the cause of the leak (if you find such to be the fact) and such escaping gas proximately caused the injuries sustained by plaintiff, then your verdict must be in favor of the defendant.''

Each of said instructions was marked by the trial court as ''Refused, except as covered by other instructions.'' The following instructions, among others, were given by the trial court:

''The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. It it the efficient cause—the

one that necessarily sets in operation the factors that accomplish the injury. It may operate directly or by putting intervening agencies in motion.

"The law does not permit you to guess or speculate as to the cause of the accident in question. If the evidence is equally balanced on the issue of negligence or proximate cause, so that it does not preponderate in favor of the party making the charge, then he has failed to fulfill his burden of proof. To put the matter another way, if after considering all the evidence, you should find that it is just as probable that the cause of the accident was one not involving negligence on defendant's part as it is that negligence on his part was a proximate cause, then, because the conflicting probabilities are equal, a case against the defendant has not been established. By the same principle, it follows that if you should find that it is just as probable that plaintiff was free from negligence, or even if negligent, that his negligence did not contribute as a proximate cause of the injury, as it is that negligence on plaintiff's part did contribute as a proximate cause, then the defense of contributory negligence has not been established."

"The defendant, however, was not an insurer of persons doing work in the vicinity of its mains and pipes. It was only required to exercise ordinary care to avoid injury to others."

A reading of the entire charge to the jury leads us to the conclusion that the jury was fully and fairly instructed on the issues presented. The refused instructions were in the nature of formula instructions, each purporting to set forth the circumstances under which the jury would have been required to return a verdict in favor of defendant. They were repetitious in substance and were objectionable in that said instructions could have served only to emphasize unduly the defendant's theory of the case. Insofar as the refused instructions contained correct statements of the law, we are satisfied that the substance thereof was adequately covered by the instructions given.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Carter, J., and Traynor, J., concurred.

Appellant's petition for a rehearing was denied January 14, 1943.