[Civ. No. 14074.   First Dist., Div. One.   Nov. 25, 1949.]

LEILA NELSON, Appellant, v. PAUL F. COLBECK, Respondent.

Frank E. Kilpatrick and Hoey, Hoey & Fenstermacher for Appellant.

Tinning & DeLap and J. Vance Porlier for Respondent.

WARD, J.—This is an appeal by the plaintiff and cross-defendant from a judgment on verdict which awarded nothing to either the plaintiff or the defendant and cross-complainant in a personal injury action arising out of an automobile collision.

In the early morning of October 9, 1947, plaintiff, Leila Nelson, was driving a 1941 Ford automobile in a westerly direction along Potrero Avenue in El Cerrito, California, toward the East Shore Highway, a four-lane thoroughfare which extends in a general northerly and southerly direction. At the junction of Potrero Avenue with the East Shore Highway there is an arterial stop sign. The plaintiff proceeded onto the East Shore Highway where her car was struck by a 1946 Dodge sedan being driven in a northerly direction along the highway by the defendant, Paul F. Colbeck. The point of impact was at the intersection, approximately 37 feet from Potrero Avenue and about 26 feet north of the south crosswalk of the highway. Each driver was alone at the time of the accident and no other eyewitnesses testified.

There is evidence that plaintiff had stopped at a stop sign one block east of the East Shore Highway and was proceeding at a "moderate" rate of speed toward the intersection with the highway; that there was little traffic and the streets were dry. The evidence is conflicting as to whether plaintiff stopped at the arterial stop sign located east of the crosswalk where Potrero Avenue enters the East Shore Highway. Plaintiff's

testimony contained the following: "Q. And coming up then to the East Shore Highway, is there a stopsign there at Potrero and East Shore Highway? A. Yes, sir. Q. An arterial stopsign at this point, is that right? A. Yes. Q. And did you stop at that point? A. Yes, sir. Mr. Porlier (counsel for defendant): At what point? Q. The arterial stopsign. . . . Q. Did you stop in the lane immediately adjacent to the arterial stopsign? A. I stopped at the Boulevard stop first. Q. And did you shift gears at that time? A. Yes, sir. Q. And into what gear did you put your automobile? A. Low. Q. Into low gear? A. Yes, sir. . . . Q. Now, Mrs. Nelson, after you had put the car into low gear, then what did you do? A. It varies. You can't see the highway on unless you pull up a little bit [shrubs obstruct view], so I pulled up approximately at that crosswalk, the next line of the crosswalk, because you can't see." Plaintiff testified that at this point she looked to the left, then right, then to the left again and proceeded across. Defendant's testimony, in part, is as follows: "Q. Where did this car that was operated by Mrs. Nelson stop? A. She did not stop. . . . A. The officer asked me if this car that I had hit, had stopped for the boulevard stopsign, had I known it was not going to stop, could I have avoided the accident? . . . A. The answer was, I probably could. . . . A. I expected the car to stop. I kept on going, and I saw it wasn't, so I applied my brakes, and saw it was going to be unavoidable for me to keep from hitting her, so from driving 9 months in combat zone, I knew how to protect myself, so at the proper moment, when I saw I couldn't clear her car, I protected my body as much as possible." The officer investigating at the scene of the accident testified that defendant had told him he was going 45 miles an hour. At the trial defendant testified that his maximum speed prior to the accident was 35 miles an hour; also that he first saw plaintiff when she was approximately 50 feet east of the intersection.

■ The fact that plaintiff's automobile when towed away was in second gear is not conclusive proof that she had stopped at the arterial stop sign. Such fact would be equally consistent with the view that plaintiff failed to stop, inasmuch as the car still might have been in second gear after starting from a stop at the intersection one block east, or she could have shifted into second from high gear after merely pausing at the stop sign on entering the highway. It is the jury's duty, not that of the appellate court, to infer *how* her automobile happened to be in that gear.

■ The facts therefore, as presented by the testimony and stated most favorably for the defendant, are that plaintiff failed to stop at the stop sign and was traveling in second gear when the collision occurred. Defendant was proceeding at 35 miles an hour approximately 50 feet south of the intersection when he first observed plaintiff, who was then about 50 feet east of the highway. Defendant was aware of the fact that arterial stop signs controlled all entering streets such as Potrero Avenue, and expected plaintiff to stop, but when he saw that she was not going to stop he applied his brakes. This evidence was sufficient for the jury to find that plaintiff was negligent and that such negligence was the proximate cause of the accident. It cannot be said as a matter of law that the defendant's actions were the proximate cause and that the verdict of the jury is unjust.

Two cases cited by plaintiff on this appeal, *Doyle* v. *Loyd,* 45 Cal.App.2d 493 [114 P.2d 398], and *Commonwealth Insurance Co. of New York* v. *Riverside-Portland Cement Co.,* 69 Cal.App. 165 [230 P. 995], are not applicable to the factual situation here involved. In each of those cases judgment for the plaintiff was upheld on appeal on the ground that although the plaintiff may have been negligent in the operation of his automobile that fact did not prevent his recovering from the operator of another motor vehicle which was being operated negligently,—the fact of proximate cause being a question for the trial court to decide upon the evidence presented. In the instant case there was evidence from which it might be found that defendant was not negligent, that he did all he could to avoid the collision, and that plaintiff was the negligent one.

*Girdner* v. *Union Oil Co. of California,* 216 Cal. 197 [13 P.2d 915]; *Glynn* v. *Vaccari,* 64 Cal.App.2d 718 [149 P.2d 409], and *Jones* v. *Yuma Motor Freight Terminal Co.,* 45 Cal.App.2d 497 [114 P.2d 438], also cited by plaintiff, are all cases in which the judgment of the lower court was upheld. In the Glynn case it was held that the defendant, once he had stopped at the through highway, was at liberty to proceed if there was no immediate hazard. In the Jones case the court held that the jury reasonably could have found the defendant able to prevent the collision after he became aware of the danger. As stated in *Page* v. *Mazzei,* 213 Cal. 644, at page 645 [3 P.2d 11], quoting from *Couchman* v. *Snelling,* 111 Cal.App. 192 [295 P. 845], "Whether or not, therefore, plaintiff after observing the approach of defendant's car, its position, and the rate of speed it was traveling and keeping the same within

his side vision, was justified in proceeding upon his rightful way across the intersection in advance of defendant presents a question upon which reasonable minds might differ and was therefore one for the jury to determine. (Citing cases.)"

■ The issue of last clear chance was not raised on the trial nor were any instructions on that theory refused. The issue should not be raised for the first time on appeal. (2 Cal. Jur., Appeal and Error, § 67; *Ales* v. *Ryan,* 8 Cal.2d 82 [64 P.2d 409]; *Niegel* v. *Georgetown Divide Water Co.,* 78 Cal. App.2d 445 [177 P.2d 641].)

■ Plaintiff alleges as error the failure to give the following requested instruction: "By the same principle, it follows that if you should find that it is just as probable that plaintiff was free from negligence, or even if negligent, that her negligence did not contribute as a proximate cause of the injury, as it is that negligence on plaintiff's part did contribute as a proximate cause, then the defense of contributory negligence has not been established." The error alleged is on the ground that no instruction was given which pointed out to the jury the proposition that the negligence of defendant might by a preponderance of the evidence be shown as the actual proximate cause, whereas negligence on plaintiff's part might exist, but nevertheless by equal preponderance not be the proximate cause. The following instructions were given and would seem adequately to cover the point: "Contributory negligence is an affirmative defense, and therefore, unless it is established by evidence offered by the plaintiff, the burden of proof as to such defense is upon the defendant. In this behalf, *it is necessary that the defendant prove by a preponderance of the evidence.* First: *That the plaintiff was guilty of negligence* as the same has been defined to you, that is, you must believe from a preponderance of the evidence that the plaintiff did something which an ordinarily prudent and careful person of the same age and experience would not have done, or failed to do something which such person acting under said circumstances, would have done, *and,* Secondly: *That such negligence,* if any on the part *of the plaintiff, proximately contributed to the injuries complained of.* The failure of the defendant to prove either one of these two elements stated causes the defense of contributory negligence to fall." (Italics added.) "If the evidence in your judgment in connection with any of the issues before you is so equally balanced in weight and quality, effect and value, that the scales of proof hang even, your verdict should be against the party upon whom rests the burden of

proof in connection with such issue." Both preponderance of the evidence and proximate cause were explained in other instructions to the jury.

Though the requested instructions might have been correct had they been given, a refusal to so instruct is not necessarily error if the same charge has been made in other language. (53 Am.Jur. § 527, p. 424.) As held in *Chutuk* v. *Southern Counties Gas Co. of California*, 21 Cal.2d 372 [132 P.2d 193], it is not error to refuse instructions which are repetitious in substance and would serve only to emphasize unduly a party's theory of the case and which, so far as they contain correct statements of the law, are covered by other instructions given. In this case the court instructed that in order to find contributory negligence the jury must find by a preponderance of the evidence that plaintiff was negligent and also that such negligence was a proximate cause of the injury. The rule is that if it is found by a preponderance of the evidence that such negligence was not a proximate cause then the defense is not established.

Plaintiff also alleges error in the giving of an instruction based on section 670 of the Vehicle Code. The instruction reads: "A vehicle traveling upon a dry asphalt or concrete pavement where the grade does not exceed one per cent must have brakes adequate to bring such vehicle to a complete stop within the distances set forth. A vehicle traveling 35 miles per hour under the conditions set forth above should be stopped in a distance of 113.0 feet." There was no question or evidence with respect to the condition of plaintiff's brakes or her ability to stop, but there was such evidence as to defendant. The negligence issue was raised as to both parties, and as to defendant's negligence such instruction is relevant. Defendant testified in regard to the mechanical condition of his car, the condition of its brakes, the distance he was from plaintiff's car when he first saw it and his ability to stop by application of his brakes at the time he first became aware of plaintiff's position. There were skid marks past the northerly crosswalk of the intersection and it is undisputed that the streets were level and dry at the time of the collision. Defendant testified that he did apply his brakes before the collision. The distance within which his brakes should be able to stop his car would be relevant to the issue of his negligence. The hypothetical conditions set forth in the code section, upon which the table of distances was set, corresponded to those in the present situa-

tion. In both *Lombard* v. *Swall*, 2 Cal.App.2d 59 [37 P.2d 696], and *Ketchum* v. *Pattee*, 37 Cal.App.2d 122 [98 P.2d 1051], it was held that the giving of instructions on what is now section 670 was error, but the evidence and factual situation developed at the trials differed. In the Lombard case there was no evidence as to the distance in which the plaintiff's brakes might have been applied after the defendant was seen, nor that the brakes were applied at all before the collision. Moreover, the streets were covered with snow while the distance table in the code section was fixed on the basis of dry pavement. In the Ketchum case there was no evidence of an attempted stop before the accident. In *Moore* v. *Miller*, 51 Cal.App.2d 674 [125 P.2d 576], the court upheld a refusal to give an instruction based on section 670 on the ground that such instruction was *not required* under the facts of that case. In the present case, any prejudice which might have resulted from the giving of this instruction was not in any event to the plaintiff.

The plaintiff has appealed from both the order denying her motion for a new trial and from the judgment. The order denying the motion for a new trial is not appealable and the appeal therefrom is dismissed. The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.