[Civ. No. 19457.   Second Dist., Div. Two.   Nov. 6, 1953.]

Estate of ZARA MAY VOLEN, Deceased. ANN H. ABRA-HAMSON et al., Appellants, v. SECURITY-FIRST NATIONAL BANK et al., Respondents.

Oliver O. Clark for Appellants.

Calkins, Hall, Conard & Johnson, J. J. Lieberman, Warner I. Praul, Rex K. Kramer, Sheppard, Mullin, Richter & Balthis, Frank S. Balthis and E. Talbot Callister for Respondents.

McCOMB, J.—From a judgment entered after trial before a jury, finding that Zara May Volen was of sound and disposing mind and memory and competent to execute a will when she signed her last will and testament on May 20, 1947, and a codicil thereto on July 6, 1950, petitioners appeal.

Respondent Security-First National Bank of Los Angeles is the executor of the will, and respondents The Regents of

the University of California and the University of California at Los Angeles Alumni Association, District Grand Lodge No. 4, B'nai B'rith, and Cancer Prevention Society, are beneficiaries thereunder.

Appellants (petitioners) are the brothers and sisters of decedent who were practically disinherited by the will.

*Facts:* On May 20, 1947, decedent, then about 62 years of age, executed her last will and testament. Thereafter on July 6, 1950, she executed a codicil thereto.

Appellants contested the probate of the will and codicil on the sole ground that the testatrix lacked testamentary capacity to make the will. The trial jury found against this contention.

*Questions:* First: *Was there substantial evidence to sustain the jury's finding that the testatrix was of sound mind and disposing memory and not operating under an insane delusion at the time she executed her will and the codicil thereto?*

*Yes.* ██ The burden is on petitioners to show affirmatively and by a preponderance of the evidence that the testatrix was of unsound mind or the victim of an insane delusion at the time of executing her will and the codicil thereto. (*Estate of Perkins,* 195 Cal. 699, 703 [2] [235 P. 45].)

██ In the instant case various witnesses testified of the testatrix's ability to manage her property and transact business affairs, and that she was of sound mind and disposing memory. Also the testimony indicated she knew the extent of her property and the nature and effect of her testamentary acts.

This evidence was sufficient and supports the finding of the jury. Therefore it is binding upon appeal (*Wallace* v. *Sinclair,* 114 Cal.App.2d 220, 227 [3] [250 P.2d 154]), and we must disregard conflicting evidence and the inferences to be drawn therefrom.

Second: *Did the trial court err in instructing the jury as follows?*

(A) "If Mrs. Volen had a delusion—if she believed it upon the evidence of her senses, or upon the statements of someone in whom she had confidence, no matter how ill-founded her conviction may have been it could not be placed in the category of an insane delusion."

"However, if you find that Mrs. Volen at the time she signed her will had sufficient mental capacity to be able to understand that she was signing a will, and to understand

and recollect the nature and situation of her property, and generally the extent thereof, and to understand her relations to the persons who were the natural objects of her bounty, and you find that the will was not the product of an insane delusion, as said term has been defined to you, you must find that she was of sound mind and had testamentary capacity at the time and that the will is valid. And if you find the same facts with respect to the time of the signing of the codicil you must find that the codicil is also valid.''

Appellants contend that under this instruction there was removed from the jurors' minds any consideration of Mrs. Volen's delusion that her husband, although dead, was yet with her—sometimes manifested by her parrot or a statue—and directed what she should do.

This contention is devoid of merit for the reason that instructions of the trial court must be considered in their entirety and not alone, separate and apart from other instructions given. (*Los Angeles County F. C. Dist.* v. *Abbot*, 24 Cal.App.2d 728, 739 et seq. [76 P.2d 188].)

In the instant case in addition to the foregoing instruction the jury was instructed as follows:

''Every mental departure from the normal will not destroy a testamentary disposition. Mental derangement sufficient to invalidate a will must be insanity in one of two forms:

'' (1) Insanity of such broad character as to create a general mental incompetency; or

'' (2) Insanity of a more limited and narrower nature known as an insane delusion.

''An insane delusion is a false belief which is the spontaneous product of a diseased mind, which comes into existence without reason or evidence to support it, and which is adhered to against reason and against the evidence.

''An insane delusion may be found only if the belief has no basis in reason or probability, and is without any evidence in its support, but exists without any process of reasoning or is the spontaneous offspring of a perverted imagination, and is adhered to against all evidence and argument. If there is any evidence, however slight or inconclusive, which might have a tendency to create a belief, such a belief is not an insane delusion.

''It is not sufficient to merely establish that the testatrix was the victim of some insane delusion to avoid the Will or Codicil. The evidence must go further and establish that the Will or Codicil itself was the creature or product of such

insane delusion, or, in other words, that the insane delusion bore directly upon and influenced the creation and terms of the Will or Codicil.

"If you find that Mrs. Volen was subject to an insane delusion, you must determine independently and separately, first, whether the Will of May 20, 1947, was the product of an insane delusion, and secondly, whether the Codicil of July 6, 1950, was the product of an insane delusion."

"The possession of an insane delusion which leads a testatrix to dispose of her property otherwise than she would have done had she not possessed such insane delusion is sufficient to invalidate a will. But to have such effect the testatrix must have been actually possessed of a delusion, and it must have been an insane one. It must be such an aberration as indicates an unsound and deranged condition of the mental faculties, as distinguished from a mere belief in the existence or nonexistence of certain supposed facts or phenomena based upon some sort of evidence. If there is any evidence, however slight or inconclusive, which might have a tendency to create a belief, such belief is not a delusion. An insane delusion does not exist unless it is one whose fallacy can be demonstrated; for except such demonstration can be made, it cannot be said that no rational person would entertain the belief."

Likewise the jury was instructed that it must consider the instructions as a whole. Considered thus, the instruction on insane delusion was correct. (*Estate of Putnam*, 1 Cal.2d 162, 172 [34 P.2d 148]; *Estate of Alegria*, 87 Cal.App.2d 645, 654 et seq. [197 P.2d 571].)

Under the foregoing instructions it is evident the jury was not prevented from considering whether decedent was suffering under an insane delusion that she was in communication with her husband. The only alleged delusion in this case was the belief of testatrix of communion with her predeceased husband. Such delusion could not be based upon "the evidence of her senses" and therefore the instruction did not prevent the jury from considering this belief as an insane delusion. It was correct.

(B) "As stated to you before, the only issues in this case are: (1) Was Mrs. Volen competent to make her will dated May 20, 1947, on that date, and (2) was Mrs. Volen competent to make her codicil dated July 6, 1950, on that date. If you understood anything in the testimony which you have heard to indicate that Mrs. Volen was unduly or otherwise influenced by any person or persons to make said will

or to leave her property as she did, or to make said codicil, you will disregard what you understood in that respect. Undue influence or fraud is not an issue in this case.''

This instruction was also correct. The jury was properly instructed that the testamentary capacity of the testatrix was the issue which was to be determined. It was further told that undue influence or fraud was not asserted by appellants, and in that respect any evidence of such was to be disregarded. As used by the court in the instruction, the meaning of "in that respect" is clear. It plainly refers to any issue of fraud or undue influence which the jury might suppose to exist. This is further evidenced by the concluding sentence of the instruction advising the jury that any undue influence or fraud was not an issue. This instruction in no way precluded the jury from considering such evidence on the issue of testamentary capacity, since the court had previously instructed the jury that in determining testamentary capacity, it was to consider "all of the evidence which has been submitted to you upon the trial of the case."

■ Third: *Did the court commit prejudicial error in refusing to give certain instructions proposed by appellants?*

*No.* The offered instructions were merely repetitious of instructions actually given by the trial court. Therefore they were properly denied. (*Chutuk* v. *Southern Counties Gas Co.,* 21 Cal.2d 372, 381 [132 P.2d 193]; *Nelson* v. *Colbeck,* 94 Cal.App.2d 792, 797 [5] [211 P.2d 878]; *Luis* v. *Cavin,* 88 Cal.App.2d 107, 115 [7] [198 P.2d 563].)

■ Fourth: *Did the trial court commit prejudicial error in excluding evidence proffered by appellants?*

*No.* Appellants assert as error 29 separate instances of exclusions of evidence. They do not, however, in a single instance point out wherein there was error or cite any authority to show they were prejudiced thereby. Appellants have not, therefore, presented their alleged errors in the exclusions of evidence in such a manner as to be properly reviewed by this court.

It is the office of a brief attacking a decision to point out the errors complained of as shown in the record, to state the points on appeal separately under appropriate headings, to give arguments and authorities in support of the points made, and to show that error resulted in prejudice to the substantive rights of appellants. (*People* v. *Daniels,* 85 Cal.App.2d 182, 185 [2] [192 P.2d 788]; *Riedman* v. *Barkwill,* 139 Cal.App. 564, 571 [7] [34 P.2d 744].)

Fifth: *Should appellants' application for permission to introduce additional evidence in the appellate court, relative to testimony of a witness who was absent from the state, and whose deposition was not taken, be granted?*

*No.* Appellants seek permission to introduce the evidence of Rabbi Maurice Abrahamson, who was absent from the state at the time of the trial, but whose deposition was not taken.

Where trial by jury is a matter of right, such as in the instant case, and has not been waived, an appellate court is without authority to receive additional evidence for the purpose of reversing the judgment. (*Steelduct Co.* v. *Henger-Seltzer Co.,* 26 Cal.2d 634, 648 [13] [160 P.2d 804]; *Syfert* v. *Solomon,* 95 Cal.App. 228, 231 [1] [272 P. 810].)

The judgment is affirmed.

Moore, P. J., and Fox, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 30, 1953. Carter, J., was of the opinion that the petition should be granted.